The Cairo and St. Louis Railroad Company

*v.*

The City of Sparta.

1. Municipal subscription—*proposition voted different from that authorized.* Where a city was authorized to subscribe to the capital stock of a railway company, upon an affirmative vote of the people, to be paid for in corporate bonds to run not exceeding *ten* years, and to bear not exceeding ten per cent interest, a proposition submitted and voted that the bonds to be issued should be made payable in not less than *twenty* years, and bear interest at the rate of eight per cent per annum, was *held* to be materially variant from that authorized by law in respect to the time they had to run before due, and that the submission was in excess of the power conferred, and the vote thereon without any binding authority, and that the issue of the bonds voted could not be coerced.

2. Constitutional law—*compelling a municipal corporation to incur a debt.* Under the constitution of 1848, the legislature could not compel a municipal corporation to incur a debt for merely local purposes against its own wishes.

3. Same—*power of legislature to validate a void vote to incur an indebtedness.* When a municipal corporation submits an unauthorized proposition to issue its corporate bonds in aid of a railway company, which is carried, and which therefore imposes no liability on the corporation, it is not within the constitutional power of the legislature to validate such vote, so as to compel the issue of the bonds voted. Under such a law, the body might issue its bonds, if it so desired, but can not be compelled to do so.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. SEARLS & JONES, for the plaintiff in error.

Messrs. HOSMER & MURPHY, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a petition for a writ of *mandamus*, which recites, that on the 24th day of November. 1868, the city council of Sparta, in this State, ordered an.election to be held on the 21st day of December, 1868, at which should be submitted to the legal voters of such city, the question of subscribing seventy thousand dollars stock to the Cairo and St. Louis R. R. Co., and receiving shares of stock from the company for that amount. provided the company built and run its road within the corporate limits of Sparta, and that when the city council should be notified of the construction and completion of the road within the limits of the county of Randolph, and should be satisfied the road would be completed to and operated within the limits of Sparta. they should cause to be issued and delivered to the company the sum of seventy-five thousand dollars in Sparta city bonds, payable in not less than twenty years from the date of issuing, and bearing interest not exceeding eight per cent per annum, and to receive shares of stock from the company for the city of Sparta for the amount so subscribed. That the election was duly held, and the result was that the proposition was carried by a considerable majority of the votes; that upon the faith of such subscription, together with the subscription of other cities, villages, counties, etc., along the line, the company caused the road to be constructed and operated, and it continues to be operated from the city of St. Louis into and through the city of Sparta, within and through its corporate limits, and that the company has tendered to the city of Sparta a certificate for seventy-five thousand dollars of its capital stock, and

demanded the bonds, which the city authorities refuse to issue, and the petition prays for a writ of *mandamus* to compel their issue.

The court below sustained a demurrer to the petition, and the company bring this appeal.

The second section of the act of 1867, (Private Laws 1867, p. 790,) which authorizes a subscription to the stock of this railway company, and the issuing of bonds therefor, provides that the bonds shall run any period, not exceeding ten years, that the city council may determine.

The proposition which was submitted to the vote of the people, and upon which they voted, was, that the bonds should be payable in not less than twenty years. Here was a material variance as to the time of payment of the bonds. Indebtedness having a long time to run will naturally be incurred with greater readiness, and less considerately than where the time of payment is much shorter.

Voters of taxes will vote a burden of taxation upon posterity more unhesitatingly than they will impose it upon themselves.

The legislature, as we may suppose, in its wisdom, having regard to the welfare of this municipality, and the best interests of its tax-payers, saw fit to interpose a check to the disposition to rush heedlessly and improvidently into the creation of indebtedness payable in the distant future, by limiting its time of payment here to ten years.

The city of Sparta had no power to take this railway stock and issue bonds for it, independently of this act of 1867. This act imposed a limit upon the power—that the time of payment of the bonds should not run longer than ten years. Submitting to a vote of the people the proposition for a subscription, the bonds therefor to be payable in not less than twenty years, was in excess of the power granted, and unauthorized by law, and the vote had upon such a submission must be regarded as without binding effect; and consequently

the city authorities should not be coerced to carry it into execution, by issuing the bonds so voted for.

It is said, in answer, that the authority given by the statute was, to vote and issue bonds, payable not more than ten years from date, at a rate of interest not exceeding ten per cent, and that the issuing of bonds having twenty years to run, at a rate of interest not exceeding eight per cent, as here voted for, is more advantageous to the city, than would be the former; so that the city is not injured by the change. but benefited, and therefore has no just cause of complaint. So far as respects the interest, merely, we can see that would be so—that it, being at a less rate, would not be materially variant as regards the interests of the city. But it is not to be said, judicially, that bonds having twenty years to run at eight per cent interest, are more advantageous to be given than those running only ten years at ten per cent interest; and that, as affecting the interest of the municipality, there is no material difference between them.

This vote having been taken on the 21st day of December, 1868, afterwards, on the 3d of March, 1869, the legislature passed an act amendatory of the charter of the Cairo and St. Louis Railroad Company, (see vol. 3, Private Laws of 1869, p. 256,) which was in force April 15th, 1869, section 2 of which provides as follows: "That all elections heretofore held in any county. city or town, in reference to a subscription to said railroad, are hereby declared legal and binding, and the county court of any county, and the corporate authorities of any city or town, in which such elections have been already held, and a majority of the votes cast were for subscription, shall have authority to issue bonds for such an amount as was voted for, notwithstanding any insufficiency, informality or irregularity in such election, or in the notice thereof."

It is contended, that the above amendatory act made valid the vote to issue the bonds, if it were not so before.

So far as the sanction of legislative authority is required, this seems sufficient.

Under this act the city may have authority to issue the bonds, and yet, not be compelled to do so. It was said in *Marshall et al.* v. *Silliman et al.* 61 Ill. 225, to be the settled doctrine of this court, that under the constitution of 1848, the legislature could not compel a municipal corporation to incur a debt for merely local purposes against its own wishes, and that this doctrine had received the sanction of express enactment in our existing constitution. To give to this amendatory act the effect contended for, would amount to the creation of a debt by the legislature against a municipal corporation for municipal purposes without its consent. The municipality itself has done nothing toward the contracting of this indebtedness, which it is sought to fix upon it, more than to submit to a vote an unauthorized proposition for the indebtedness, and an unauthorized vote accordingly had in its favor. The corporate authorities refused to issue any evidence of the indebtedness so voted. We find them to be right in such refusal; that the election was not binding. If this act makes the election binding, and compels the corporate authorities to issue the bonds, then it is by force of the act that the debt will be created. There has been here no fair vote in favor of the creation of the debt. As was said in the case cited, persons opposed to the subscription were under no necessity or obligation to vote against it, because they had a right to regard the entire proceeding as a nullity; that the vote could not be accepted as the action of the town, or as giving the consent of the town to the creation of the debt.

To be sure, that was a much stronger case than the present one, there having been no color of authority for the election. A majority of the legal voters in a certain township in special town meeting voted to subscribe for and take $15,000 of the stock of a railway company, over and above the amount authorized to be taken by the charter of the company. The legislature, by a subsequent act, legalized and confirmed the

election, and declared the subscription to be binding upon the township. The law was held by this court to be unconstitutional and void, as creating a debt against a municipal corporation for municipal purposes without its consent. There was here, in the case at bar, power to submit to a vote a proposition for subscription, but the act of submission and the vote were, as we hold, in excess of the power, making the vote taken illegal and without binding effect; and we are of opinion that the principle of the decision in the case cited, must apply here and control, although that case was much the stronger in the want of power to vote the subscription.

There appears here nothing of acquiescence or ratification on the part of the city, since the taking of the vote; there has been no issuing and passing of bonds into the hands of innocent purchasers, giving rise to any question of estoppel from acts, or non-action in the above respects; and we are of opinion that there is not a case presented for a *mandamus* to compel the issuing of these bonds, and that the court below did not err in sustaining the demurrer to the petition.

The judgment will be affirmed.

*Judgment affirmed.*