JOHN G. CAMPBELL

v.

SAMUEL MORGAN.

</div>

1. CORPORATIONS—CERTIFICATES OF STOCK—BONA FIDE HOLDER.—Certificates of stock in an incorporated company, are not securities for money, nor do they possess the qualities of commercial obligations, so as to protect a *bona fide* purchaser or holder from equities of the corporation against them; and where stock of a corporation was fraudulently issued by one of its officers, and transferred to a third person as collateral security for a debt, it was not error, upon a bill filed for that purpose, to order the certificates of such stock returned and canceled.

2. PARTIES.—In a proceeding by a stockholder to have certain certificates of stock returned to the corporation and canceled, as having been fraudulently issued, the corporation is a necessary party.

ERROR to the Circuit Court of Johnson county; the Hon. JOHN DOUGHERTY, Judge, presiding. Opinion filed August 1, 1879.

Mr. ANDREW D. DUFF, for plaintiff in error; that pleadings

Campbell v. Morgan.

must be taken most strongly against the pleader, cited Story's Eq. Pl. § 257; Cent. Law Jour. Nov. 29, 1878, 431.

Plaintiff in error is an innocent holder, and has a good title: People v. Elmore, 35 Cal. 653; Weston v. B. R. A. W. & M. Co. 5 Cal. 186; Kellogg v. Stockwell, 75 Ill. 68.

The corporation is a necessary party: Wells v. Jewett, 11 How. Pr. 242; Bank of America v. Pollock, 4 Edwd. 215.

When one of two innocent parties must suffer, he who enables a third party to occasion the loss, must bear it: Taylor v. G. I. P. R. Co., De Gex & J. 559; Jennings v. Gage, 13 Ill. 611; Harvey v. Smith, 55 Ill. 224; Yocum v. Smith, 63 Ill. 321; Kerr on Fraud and Mistake, 137.

Complainant having occasioned the grievance complained of, if he is entitled to any relief it should be at his own costs: Price v. Blackmore, 65 Ill. 386; Linton v. Quinby, 57 Ill. 271; Nicoll v. Trustees, 1 Johns. Ch. 166.

Mr. SAMUEL P. WHEELER, for defendant in error; that the holder of the certificates acquired no greater rights than the one to whom it was issued, cited Powell v. Jeffries, 4 Scam. 387.

As to parties: Hopkins v. Roseclare Lead Co. 72 Ill. 373.

This court has no discretion to award costs: Ennor v. Thompson, 46 Ill. 214; Gage v. Chapman, 56 Ill. 311; Carpenter v. Davis, 72 Ill. 14; Barton v. Mosher, 62 Ill. 237; N. Ill. R. R. Co. v. R. & M. R. R. Co. 49 Ill. 356.

Shares of stock vest in the subscribers, according to their respective contributions only: Angell & Ames on Cor. § 556.

If pledged they remain in the pledgor: Angell & Ames on Cor. § 132; Rev. Stat. Chap. 32, § 23.

To create an estoppel *in pais* there must be some act or declaration which induced the other party to act: Ball v. Hooten, 85 Ill. 161; Hefner v. Vandolah, 57 Ill. 520; Kinnear v. Mackey, 85 Ill. 96; Chandler v. White, 84 Ill. 435; Int. Bank v. Bowen, 80 Ill. 541; Straus v. Minzesheiner, 78 Ill. 492.

The remedy sought is a proper one: 2 Story's Eq. § 701.

WALL J.   This case was commenced in the Circuit Court of Johnson County, by bill in Chancery filed by defendant in

error against plaintiff in error, and Daniel Chapman, adminis-
trator of Frank J. Chapman, deceased. The bill alleged that
on the 26th day of November, 1877, the Secretary of State, upon
application made to him, did in pursuance of Sec. 2. Chap. 32,
Rev. Stat., issue a license to Frank J. Chapman, H. L. Boren,
Saml. Morgan, S. P. Jackson and John Martin, as commission-
ers, authorizing them to open books for the subscription of the
capital stock of the "Chapman Lumber Company:" that on
the 28th day of November, 1877, the commissioners opened
books for subscription of stock, and that F. J. Chapman
subscribed for fifty shares; defendant in error, Samuel Morgan,
for forty shares ; Hiram L. Boren, for seven shares; Samuel
P. Jackson for two shares, and John Martin for one share—all
of one hundred dollars each: that these facts were reported
to the Secretary of State, who on the first day of December,
A. D. 1877, issued a certificate of the complete organization of
said corporation or company. That afterwards said F. J.
Chapman was elected president, director, secretary, and
treasurer of said company, and then said company commenced
the building of a saw-mill in Johnson county ; that at the time
of the organization of said company, nothing was paid by any
of the parties on their respective subscriptions; but that each
was to contribute certain specific things or property, and if any
sum should appear to be due them upon the books of the com-
pany, such sum was to go as a payment on said stock. That
complainant (defendant in error) had fully paid for his forty
shares; and also had a credit on the books of the company
for $1,806,31; also that he owned the two shares subscribed by
Jackson, and the one share subscribed by Martin, and that
these three shares were also fully paid for. That Chapman
died intestate in June, 1878 ; that he never paid anything upon
his said subscription ; that at his death he was indebted (exclu-
sive of this stock transaction) to the said company in a consider-
able sum of money ; and that the administrator of Chapman
settled with the company. That about the 25th of December,
1877, Chapman issued to himself (or plaintiff in error) certifi-
cates of forty shares of this stock; that plaintiff in error held
the same as collateral security, for a debt contrated prior to the

Campbell v. Morgan.

time said stock was delivered to him.    That upon the death of
F. J. Chapman, Daniel Chapman was appointed administrator;
that said stock at date of issue was worthless, &c., and that the
issuing of the same by said Chapman without payment for
the same was a fraud upon complainant ; that Chapman's
estate is insolvent, and prayed that the stock might be declared
void, and the certificates held by Campbell might be surrendered
and canceled.

The Circuit Court overruled a demurrer to this bill, and no
further steps being taken by the defendants, decreed the can-
cellation of the certificates, requiring the plaintiff in error to
surrender them to the clerk of the Circuit Court, who was
directed to write across the face of each certificate—"Can-
celed by decree of the court"—and that plaintiff in error pay
the costs.    It is objected that no equity is shown on the face
of the bill, and that necessary parties are omitted.    We think
the first objection is not well taken.    It is averred that the
stock was issued improperly—that it had not been paid for—
that Campbell took it as a pledge to secure a pre-existing
debt, due him from Chapman.    To this it is replied that the
company can not be heard to make this proposition; that it is
bound by the acts of its officers, who committed the alleged
fraud; that it was grossly negligent in not requiring security
from its officers, as it was permitted to do by the charter
under which it is organized; that Campbell is a *bona fide* holder
of the stock; and that if any loss is to be sustained it should
be borne by the corporation which, by its negligence, made it
possible for the alleged state of things to exist.

While it is said to be " difficult to classify certificates of
stock with other species of property, as being entirely identical
in feature and character," yet it is well settled that they are
not securities for money, nor do they possess the qualities of
commercial obligations, and they are not subject to the rules
and principles of the law merchant, as are negotiable notes and
bills of exchange.    They are but muniments of title, evidence
of the holder's right to a proportion of the property and fran-
chises of the corporation; and while they are negotiable in the
sense that the buyer may acquire all the rights of the seller,

yet they are transferred subject to all the equities of the corporation. Angell & Ames on Corporations, § 560, and notes; Potter on Corporations, § 262, *et seq.*

If the allegations in the bill are true—and they must be so treated for the purposes of the demurrer—the issue of the stock was unwarranted, and was a fraud on the corporation and the *bona fide* stockholders. Campbell could occupy no better position than Chapman, and if the stock could have been canceled in the hands of the latter, then it may be canceled in the hands of the former. What would be the remedy of a *bona fide* purchaser of stock, improperly issued, against a corporation for the unauthorized act of its officers in so issuing the stock, need not be discussed, as the question is not presented by the record. Does the bill omit necessary parties? It is an elementary rule that in equity proceedings all persons whose rights may be injuriously affected by the proposed decree should be made parties.

The property and franchises of a corporation, and the liability of stockholders in respect of their stock, constitute a trust estate to be administered by the corporation for the benefit of all concerned. The corporation is the guardian and representative of all who own any of its stock and ordinarily it would seem to be unnecessary, as it would almost always be impracticable to make the shareholders parties to litigation affecting the corporate estate. In this case there is but one other shareholder, and there would be no difficulty in bringing him in, nor does it appear how the proposed decree would injure him; but this would make no difference—his rights could be amply guarded by the corporation, and while he might be admitted as a party upon his own application, if he could show it to be necessary for his protection, yet we think he is not, in the first instance, a necessary party. But we think the corporation is an indispensable party. The object of the proceeding is to cancel forty shares of its stock. It is not shown by the bill what by-laws there may be as to the mode of issue and transfer of its stock, nor what might be the liabilities of the corporation to a holder of certificates for the unlawful act of the corporate officials in issuing them, but if the decree of the

court is effective it absolutely sets aside and nullifies the contract or undertaking of the parties as set forth in the certificate. The corporation is a party to this contract. The original holder was, and the assignee becomes, a party to it also, and the corporation may have the right to treat the one or the other as the real holder of the stock, and to enforce against him, under its by-laws, the liability of a *bona fide* shareholder. If in this suit Morgan may procure a cancellation of the shares held by Campbell, there may be instituted another proceeding in another court, between other shareholders, who may act collusively or ignorantly, resulting in the cancellation of more stock, and the process may be continued until all the outstanding certificates have been thus extinguished without notice to the corporation. And while the books of the company may show a satisfactory list of stockholders to whom certificates have been regularly issued, and upon whom, under the by-laws, assessments may be levied to meet corporate liabilities; yet when called on, they would respond that they were no longer stockholders; that it had been adjudged by a competent tribunal that their certificates were invalid, and that the same had been long since canceled accordingly.

If it be said that the stock is transferable only on the books of the company, and that the company cannot be affected by a proceeding to which it is no party, then we have the anomalous result that the rights of the holder of the certificate have been passed upon, but the rights of the corporation, being a party to the same instrument, are unaffected. If the transfer can be only upon the books of the corporation, a *bona fide* holder of a certificate may, by mandamus, compel the corporation to make the proper entries, if no legal objection exists. As a general common law rule, the corporation is bound to protect all persons interested against illegal or unauthorized transfers. This is a trust reposed in the corporation for the protection of individual interests, and like every other trust, must be executed with proper diligence and care, and the trustee is responsible for any injury sustained by its negligence. Potter on Corp. Sec. 265. It is required by Sec. 32, Ch. 120, R. S., that all corporations organized under the laws of this State shall, for

revenue purposes, make out and deliver to the assessor a sworn statement of the amount of their capital stock, setting forth, among other things, the amount authorized and the number of shares into which it is divided, and the amount of paid up stock. For omitting to make such statement, or for making a false statement, a penalty is provided, and perjury may be assigned upon any false oath so made. See Secs. 56 and 57, Ch. 120. Again, it is provided by Chap. 77, Secs. 52–56, that the shares of a stockholder in a corporation may be taken in execution—something unknown at common law. The officer having charge of the execution must leave a copy thereof with the official in charge of the corporate books and papers, and it is made the duty of the latter to give the former a certificate of the number of shares held by the judgment debtor, and for failing to do so, or for giving a false certificate, liability is imposed upon him. The purchaser at the execution sale may have the shares transferred to him upon the books, and may have a formal certificate of stock. In order to comply intelligently and safely with these statutory requirements, and to properly perform its common law obligations, the corporation should have the means of knowing to whom shares have been issued, and what valid certificates are outstanding; otherwise, it is apparent the most unfortunate complications may occur. The decree is reversed and cause remanded, with leave to amend the bill.

<div align="right">Reversed and remanded.</div>