Don Onstott

*v.*

The People *ex rel.* Thomas Penwarden, Collector.

*Filed at Mt. Vernon January 20, 1888.*

1. Municipal subscriptions and bonds—*in aid of railroads—since the adoption of the constitution of 1870 — or upon a vote prior thereto.* Since the adoption of the constitution of 1870, a county has no power to become a stockholder in any railroad corporation, or to make donation to or loan its credit in aid of any such corporation, except when subscriptions have been authorized, under existing laws, by a vote of the people of such county, prior to the adoption of the constitution.

2. Same—*of conditions to the subscription— as controlling the effect of the vote.* A corporate subscription had been voted by the voters of a county prior to the adoption of the constitution, upon the express condition in the order calling the election, that no bonds should be issued or stock subscribed unless the railroad company should, within a certain time, locate its machine shops at a certain place in such county, which was never complied with: *Held,* that by reason of a non-compliance with the condition, the county court had no authority to make the subscription and issue the bonds of the county, and if issued, they were void, and also that a tax levied to pay the interest thereon was illegal, and could not be collected.

3. A county or other municipal corporation has no right to take stock in a railway company and issue its bonds in payment thereof, except when the same has been voted for, in pursuance of law, before the adoption of the constitution of 1870, and not then, except upon the terms and conditions specified in the vote of the people.

4. SAME—*a majority vote—upon what basis to be ascertained—as, upon the vote cast at the last preceding general election.* Under section 4 of the Railroad law of 1849, county authorities are not empowered to subscribe to the capital stock of a railway corporation, or to issue the bonds of the county in aid of such corporation, unless a majority of the qualified voters of the county shall have voted in favor of the same, taking as a standard the number of votes cast at the last general election held in the county next before the vote was had.

5. On the 18th of January, 1870, the county court of Perry county submitted a proposition to the voters of the county to subscribe $100,000 to the capital stock of a railway company, to be voted on under the act of 1849, on February 19, 1870. Under this order the election was had, resulting in 986 votes in favor of the proposition, and 91 votes against it. At the last preceding general election for county officers there were cast 2024 votes. Under this vote the bonds of the county were afterward issued: *Held,* that the bonds were issued without authority of law, and were void.

APPEAL from the County Court of Perry county;· the Hon. S. G. PARKS, Judge, presiding.

Mr. THOMAS J. LAYMAN, for the appellant:

Municipal corporations have no power to issue bonds in aid of railroads, except as is clearly given by the legislature, and all persons dealing with such paper must see that the power exists. *Gaddis* v. *Richland County,* 92 Ill. 126; *Lippincott* v. *Town of Pana,* id. 34; *McClure* v. *Town of Oxford,* 4 Otto, 429; *Harding* v. *Railroad Co.* 65 Ill. 90; *Hewitt* v. *Normal School District,* 94 id. 532; *Supervisors* v. *Farwell,* 25 id. 181; *Clark* v. *Hancock County,* 27 id. 305; *Marshall County* v. *Cook,* 38 id. 44; *Wiley* v. *Silliman,* 62 id. 170; *McWhorter* v. *People,* 65 id. 290; *People* v. *Johnson,* 100 id. 544; *Welch* v. *Post,* 99 id. 475; *Police Jury* v. *Brittin,* 15 Wall. 566.

When a municipal subscription is authorized upon conditions, the conditions must be performed, and bonds issued contrary thereto are void. *Middleport* v. *Life Ins. Co.* 82 Ill. 562; *Richeson* v. *People,* 115 id. 450; *Town of Eagle* v. *Kohn,* 84 id. 292.

The terms and conditions on which the voters voted were shown by the public records, of which all persons must take

notice. *Jackson County* v. *Brush,* 77 Ill. 59; *People* v. *Jackson County,* 92 id.; 451; *People* v. *Town of Waynesville,* 88 id. 469; *Wright* v. *Bishop,* id. 302; *Buchanan* v. *Litchfield,* 12 Otto, 29.

Poll-books are evidence of the number of votes cast at an election. *Piatt* v. *People,* 29 Ill. 67; *Chestnutwood* v. *Hood,* 68 id. 138; *People* v. *Ruyle,* 91 id. 528; *People* v. *Hilliard,* 29 id. 425.

These bonds having been issued without authority of law, are void, and the levy of taxes and payment of interest would not render them valid. *Schuyler County* v. *Farwell,* 25 Ill. 181; *Marshall County* v. *Cook,* 38 id. 48; *Lippincott* v. *Town of Pana,* 92 id. 34; *Trustees* v. *People,* 63 id. 301.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an application by the collector of Perry county, at the May term, 1887, of the county court, for judgment against lands and town lots for delinquent taxes. Don Onstott, the owner of certain lots described in the record, appeared and filed objections to the application for judgment for taxes levied to pay interest on ninety-seven bonds, of $1000 each, which had been issued by Perry county to the Belleville and Southern Illinois Railroad Company. Onstott also filed objections to the rendition of judgment against his lots for taxes levied to pay interest on one hundred bonds, of $1000 each, issued by Perry county to the Chester and Tamaroa Coal and Railroad Company. On the hearing, the court overruled the objections, and rendered judgment against the lands and lots for the taxes remaining due and unpaid. To reverse the judgment Onstott appealed.

We will first consider the objections to the taxes levied to pay the interest on the ninety-seven bonds, of $1000 each, issued to the Belleville and Southern Illinois Railroad Company.

It appears from the evidence introduced on the trial, that on the 24th day of May, 1869, the county court of Perry

county entered of record an order providing for an election to be held in the various voting places in the county on the 3d day of July, 1869, to ascertain whether the county court should subscribe $150,000 of stock to the Belleville and Southern Illinois Railroad Company. The order for an election contained the following conditions: "And be it further ordered, that no bonds be issued or stock subscribed by said court to the Belleville and Southern Illinois Railroad Company, unless twelve hundred and thirty legal voters of said county shall have voted in favor of the same at said election, nor until said company shall have built railroad, and put the same in operation, from Belleville to Du Quoin, through the town of Pinckneyville, with depot and depot buildings at said town, nor unless said road shall be in operation from Belleville to Du Quoin on or before the 1st day of January, A. D. 1871, and shall locate their machine shops at said Du Quoin." It also appeared from the evidence, that the railroad company never located its machine shops at Du Quoin, but on the other hand, it erected its machine shops at East St. Louis; that the cost of the shops so erected amounted to the sum of from $100,000 to $150,000. But disregarding the failure of the company to perform the conditions upon which the people voted the bonds, on the 5th day of December, 1870, the county court of Perry county made an order directing the judge and clerk of the court to issue one hundred bonds, of $1000 each, to the railroad company, bearing date January 1, 1871, payable January 1, 1891, with interest at seven per cent per annum.

After the adoption of the constitution of 1870, a county had no power to become a stockholder in any railroad corporation, or make donation to, or loan its credit in aid of, such corporation, except when subscriptions had been authorized, under existing laws, by a vote of the people of such county prior to the adoption of the constitution. In the case under consideration, there was a vote of the people of the county before the adoption of the constitution, but the authority conferred upon

the court by the vote was upon condition that the railroad company should locate its machine shops at Du Quoin. The county had no right to take stock and issue bonds except upon the terms and conditions specified in the vote of the people.

*Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, is an authority in point. It is there said: "The obligations assumed under existing laws can not, since the adoption of the constitution, be enlarged or materially changed, either by the action of the people of the township or its corporate authorities. All power is taken away, and the utmost that can be done is to make and complete the subscription or donation previously voted under then existing laws, upon the same terms and conditions voted. Subscriptions or donations on other terms would obviously require new consent on the part of the people of the municipality, which can not be had for the want of power." The same rule is announced in *People* v. *Town of Waynesville,* 88 Ill. 469, and in *People* v. *Jackson County,* 92 id. 451.

Under the decisions cited, it is manifest that the county authorities of Perry county could do no more than carry out the will of the voter, as embodied in the conditions expressed in the order under which the vote was taken, and any other action taken by the county authorities could not be obligatory or binding upon the tax-payers of the county. Here, the county authorities were authorized to issue bonds, provided the railway company located its machine shops at Du Quoin. This, however, the railway company failed to do, and as it had failed to perform the condition upon which the bonds were to be issued, the county authorities had no power whatever to issue the bonds. If, then, the bonds were issued without authority of law, it follows that taxes can not be levied to pay the interest on the bonds. We think, therefore, that the court erred in rendering judgment against appellant's lands to pay taxes levied to pay interest on the ninety-seven bonds.

We now come to the second question presented, which involves the validity of the judgment rendered by the county court

against appellant's lots for taxes levied to pay interest on the bonds issued by Perry county to the Chester and Tamaroa Coal and Railroad Company.

The bonds were issued under the act of November 6, 1849. (Public Laws of 1849 and 1851, p. 28.) The 4th section of the act is as follows: "No subscription shall be made, or purchase or bonds issued, by any county or city under the provisions of this act, whereby any debt shall be created, by said judges of the county court, or by the common council of any city, to pay any such subscription, unless a majority of the qualified voters of such county or city, (taking as a standard the number of votes thrown at the last general election previous to the vote had upon the question of subscription, under this act, for county officers,) shall vote for the same."

On the 18th day of January, 1870, the county court of Perry county submitted the proposition to the voters of the county, to subscribe $100,000 to the capital stock of the Chester and Tamaroa Coal and Railroad Company, the proposition to be voted upon on the 19th of February, 1870. Under this order an election was held in all the precincts in Perry county except Du Quoin, and, as appears from the poll-books, 1077 votes were cast,—986 in favor of the proposition and 91 votes against the proposition. No returns were made showing an election in Du Quoin precinct. It also appears, from the poll-books, that at the last general election next preceding the election of the 19th day of February, 1870,—to-wit, the general election on the 2d day of November, 1869, at which county officers of Perry county were elected,—2024 votes were thrown. It was, therefore, required by the act of 1849, that the proposition should receive 1013 votes before it could be held to have been adopted by the voters of the county. By the terms of the 4th section of the act under which the election was held, the county authorities were not empowered to issue the bonds unless a majority of the qualified voters of the county voted in favor of issuing bonds, taking as a standard the number of

votes cast at the last general election held in the county next before this vote was had. This was not done.

In *Marshall County* v. *Cook*, 38 Ill. 45, where an election had been held and bonds issued under the act of 1849, the bonds were held to be invalid, because the election was called by the county court when it should have been called by the board of supervisors. In *Williams* v. *Town of Roberts*, 88 Ill. 20, the *Marshall County case* is cited with approval and it is there said: "This court has repeatedly announced the doctrine that where a municipality is empowered to subscribe to the capital stock of a railroad company, and issue its bonds in payment of the subscription, but it is also required that there shall first be an affirmative vote of a majority of the electors of the municipality to that effect, no power exists to make the subscription and issue the bonds until after such vote shall have been obtained, at an election held for that purpose, called by the authority prescribed by the law, and upon such notice of the time and place of holding the election as the law shall direct."

It will not be necessary to multiply authorities on the question. We are of opinion, as the proposition to issue the bonds did not receive the vote required by the statute, the county court had no right to issue the bonds, and the bonds being illegal, taxes could not properly be levied and collected to pay interest thereon.

The judgment of the county court will be reversed, and the cause remanded for another trial consistent with this opinion.

*Judgment reversed.*