## SAMUEL C. STEBBINS
### *v.*
## PERRY COUNTY.

*Filed at Mt. Vernon May 10, 1897—Rehearing denied October 12, 1897.*

1. COUNTIES—*a vote to subscribe for railroad stock must comply with
the statute.*  Under the act "to provide for a general system of rail-
road incorporation," approved November 6, 1849, which authorizes
counties to subscribe for not to exceed $100,000 of capital stock
upon a vote of the people, a vote to subscribe for $150,000 of such
stock is unauthorized and has no binding effect.

2. SAME—*railroad bonds of county void when vote of people was un-
authorized.*  Railroad bonds issued by a county after the adoption
of the constitution of 1870, in pursuance of a prior vote of the
people, are absolutely void, where such prior vote was unauthor-
ized by law.

3. SAME—*payments on void railroad bonds will not render them valid.*
Payment by a county of the interest on all and the principal of
part of its railroad bonds, issued in compliance with a prior unau-
thorized vote of the people to subscribe for railroad stock, will not
validate the subscription, as its validity is dependent upon a valid
prior election, and not upon subsequent acts.

4. CORPORATIONS—*equity may cancel capital stock issued contrary to
law.*  The issue of capital stock contrary to law creates a cloud
upon the rights of other stockholders, and the right to have such
cloud removed may be asserted in equity by stockholders at any
time during the existence of the cloud, although the corporation
treats the holder of such stock as a *bona fide* stockholder.

5. PARTIES—*when stockholder may enforce property right of corpora-
tion without prior demand.*  The rule that a stockholder cannot bring

suit in his own name to enforce a property right of a corporation without a prior demand upon the corporation to do so in its own name, does not apply where a stockholder seeks in equity to cancel as a cloud upon his rights an issue of capital stock which the corporation treats as valid.

6. PLEADING—*stockholder seeking to cancel stock need not offer to return consideration.*  A stockholder seeking in equity to cancel capital stock which has been paid for by an issue of bonds, need not, as a condition precedent to his right to sue, offer to return such bonds, where he was not a party to their procurement, has no control over them and is prejudiced by their existence.

CARTER, J., dissenting.

*Perry County* v. *Stebbins*, 66 Ill. App. 427, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Perry county; the Hon. B. R. BURROUGHS, Judge, presiding.

CHARLES W. THOMAS, for appellant.

JOHN BOYD, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

At an election held in the county of Perry on the third day of July, 1869, upon the question of subscription to the capital stock of the Belleville and Southern Illinois Railroad Company, to be paid by the bonds of that county, the notices for the election contained a clause providing, among other things, that "no bonds should be issued or stock subscribed until the railroad company should locate their machine shops at DuQuoin." The Belleville and Southern Illinois Railroad Company was incorporated under an act of the General Assembly approved February 14, 1857. By section 9 of that act the directors were authorized to take and receive subscriptions to their capital stock from any other railroad company or corporation, and from any county, city, town or village. This act of incorporation did not authorize the

county to subscribe stock, but authorized the corporation to receive subscriptions to its stock, subject to the provisions and restrictions of an act entitled "An act to provide for a general system of railroad incorporation," approved November 6, 1849. *Pitzman* v. *Village of Freeburg*, 92 Ill. 111.

By the notices of election held under the act of 1849 to authorize the subscription, the amount voted to be subscribed was $150,000. On the fifth day of December, 1870, at a regular meeting of the county court of Perry county, an order was entered as follows:

"Be it ordered by the court, that the judge and the clerk of this court issue this day to the Belleville and Southern Illinois Railroad Company one hundred bonds of $1000 each, bearing date January 1, 1871, with interest at the rate of seven per cent per annum from their date, and payable on the first day of January, 1891, and redeemable at the pleasure of the county at any time after the first day of January, 1876, on account of the subscription of the said county to the capital stock of said company, heretofore made by the court in accordance with an order of this court made May 24, 1869, submitting to the legal voters of Perry county the question of subscribing $150,000 to the capital stock of said company, under which order a special election was held on the third day of July, 1869, and the majority of the legal voters of said county voted for such subscription.

"Thereupon, in accordance with the foregoing order of this court, the judge of this court, and the clerk thereof, proceeded to execute such bonds (the same being numbered consecutively from 1 to 100) and delivered the same to the president and secretary of said Belleville and Southern Illinois Railroad Company, who thereupon delivered to said court the following certificate:"

The certificate referred to in the concluding part of this order was a certificate signed by the president and secretary of the railroad company that Perry county was

the owner of one thousand shares, of $100 each, in that corporation.

The complainant in the bill filed in this case is the owner of ten shares of the stock of that railroad company, and alleges the fact of the subscription, and further alleges that said company never located its machine shops at DuQuoin but located them at East St. Louis, at a cost of not less than $50,000; that said county court, knowing that said machine shops had not been located at DuQuoin, and disregarding the conditions of said vote, did, on the fifth of December, 1870, under the pretended authority of said vote, subscribe for one thousand shares of stock in said company at $100 each, and in payment therefor did issue to said company one hundred bonds of said county of $1000 each, and bearing date January 1, 1871, payable January 1, 1891, and bearing interest at seven per cent per annum; that said county appears upon the books of said company as a stockholder of one thousand shares of the capital stock, and has certificates therefor, "when in truth and in fact said county never was a stockholder in said company, and that said subscription and bonds were void;" that as long as said county is recognized as a stockholder and said stock uncanceled upon the books of said company, the stock of the complainant is depreciated and he in danger of losing his just share of the earnings and dividends of said company; that there is danger that said county will fraudulently assign or transfer said certificates of stock, and thereby make necessary a multiplicity of suits to enforce and establish the complainant's rights; that he brings suit on his own behalf, as well as on behalf of all stockholders in said company who will join with him in the proceeding, and makes said county and said Belleville and Southern Illinois Railroad Company parties defendant, and prays for summons against them; prays for temporary injunction restraining said county from selling or transferring said stock and restraining said company from

paying dividends on the same or recognizing said county
as a stockholder in said company, and further prays that
on final hearing "said stock and the certificate thereof
now held by said county be canceled, and forever held
for naught in the hands of said county or in the hands of
any person to whom the same, or any part thereof, may
come after this suit becomes *lis pendens.*"

To this bill the Belleville and Southern Illinois Rail-
road Company defaulted. The county filed its answer
admitting certain allegations and denying others, and
on hearing a decree was entered in accordance with the
prayer of the bill. On appeal to the Appellate Court
for the Fourth District there was a reversal. It was
shown that the notices of election were as above stated,
and the bonds issued as entered in the order, and certifi-
cate of stock delivered to the county. It was shown the
shops were not located at DuQuoin, and the county for
many years paid interest on these bonds, and in 1877
paid three of the bonds.

The act of 1849, under which this subscription was
made, gives any municipality therein named authority to
subscribe for not to exceed $100,000 of the capital stock
of any railroad company, but provides that no such sub-
scription shall be made unless authorized by a vote of
the people. The limit of the subscription allowed by law
being $100,000, the vote upon the proposition recited in
the order of the county court, being a vote upon a propo-
sition to subscribe $150,000, was illegal. The county
court had no power to call an election upon the question
of voting for or against subscribing $150,000, any more
than it could call an election to determine whether the
county should subscribe $1,000,000. The statute did not
permit or authorize any such an election, and it was
therefore no authority under the statute above quoted.
Under the constitution it was necessary that the sub-
scription *actually made* should have been authorized under
existing laws by a vote of the people. In other words,

the people must have voted favorably under some law providing for the election. The vote contemplated by the constitution was a legal vote cast at an election authorized by law.

The principle which controls here is the one applied by this court in the case of *Cairo and St. Louis Railroad Co.* v. *City of Sparta,* 77 Ill. 505. There the statute allowed bonds issued in payment of stock in the railroad company to run not exceeding ten years. The proposition submitted to the people contemplated bonds which were to run twenty years. This court held the election to be without validity. The language used in the opinion applies to this case. The court says (p. 507): "The city of Sparta had no power to take this railway stock and issue bonds for it independently of this act of 1867. This act imposed a limit upon the power—that the time of payment of the bonds should not run longer than ten years. Submitting to a vote of the people the proposition for a subscription, the bonds therefor to be payable in not less than twenty years, *was in excess of the power granted and unauthorized by law,* and the vote had upon such a submission must be regarded as without binding effect."

There is, then, no escape from the conclusion that the subscription was not merely an act *ultra vires,* which might have been cured if the stock had been transferred to some innocent purchaser and there had been long delay and acquiescence, during which rights had been acquired by parties without notice, but it was an act forbidden by positive law, and carrying with it upon its face notice to the world of its illegal character. The case becomes all the stronger where the prohibition is contained in the fundamental law. (*Jenkins* v. *Gasdonia Manf. Co.* 115 N. C. 535; *Hedges* v. *Dixon,* 150 U. S. 187.) Such an act is never protected by law at any time. No authority to issue these bonds was conferred by the vote thus taken, and the bonds having been issued after the present constitution was in force were absolutely void.

In an application by the collector of Perry county for judgment against lands and lots for delinquent taxes levied to pay interest on these bonds, objections were filed and such proceedings were had that the case came before this court in *Onstott* v. *People ex rel.* 123 Ill. 489, where it was held the county court had no authority to issue these bonds and they were void. Subsequently an action was brought in the Circuit Court of the United States for the Southern District of Illinois to recover the amount of certain coupons taken from these bonds so issued, and on appeal to the Supreme Court of the United States these bonds were held invalid. (*Citizens' Saving and Loan Ass.* v. *Perry County*, 156 U. S. 692.) In this last case, and in that of *Onstott* v. *People ex rel. supra*, both opinions placed the invalidity of these bonds on the fact that under the provisions of the constitution of 1870, which came into force after the vote to issue these bonds but before their issue, the county court by its order to issue these bonds, and the county officers by issuing them, violated their duty.

The county did not become a stockholder by its act of subscription, because that act was void. It incurred no liability by reason of the issue of its bonds. The payments made of interest, and the principal to the amount of $3000, did not make it a stockholder, because its becoming such was dependent on a valid election. The validity of the subscription depended on what was done before the subscription, and not on what was done subsequently thereto. The subscription was prohibited by the constitution and could not be validated. It could not be made effective. The county could not become a stockholder by paying an invalid bond given for the stock.

Resulting from the acts of the officers of this railroad company and the county officers of Perry county, stock to the amount of one thousand shares, of $100 each, is in possession of Perry county. That stock carried on the books of the company is a cloud upon the rights of all

regular stockholders. The bill in this case alleges that the company recognizes and treats the county as entitled to all the rights of a stockholder, and on that ground the corporation is made defendant and the suit brought on behalf of all stockholders who are willing to join the complainant in the prosecution thereof. Equity has ample power to cancel even over-issued stock. (Cook on Stock and Stockholders, sec. 297, and notes; *Campbell* v. *Morgan,* 4 Ill. App. 100.) The stock in this case, however, is something more than merely over-issued stock. It is stock the issuance of which was forbidden by law. It is not of that class alluded to in most of the cases which deal with over-issued stock, where the acts complained of were merely *ultra vires* or outside or beyond existing powers. It being stock improperly issued, it creates a cloud upon the rights of other stockholders, and the right to have such cloud removed is a continuing one, that may be asserted at any time during the existence of the cloud. *Miner* v. *Beckman,* 50 N. Y. 337.

It is urged that complainant had no standing in a court of equity because he did not previously request the corporation to bring the suit to cancel the stock. It could not be a party to a suit, as complainant, to cancel its own stock, for it would not be permitted to deny the validity of a subscription which it procured or accepted. The corporation has no interest in having stock canceled. As a general rule, a stockholder cannot bring a suit to enforce a property right of the corporation without a prior demand upon the corporation to do so in its own name. But to this general rule there are exceptions. Among others, Thompson, in his work on Corporations, at section 4507, in speaking of cases where a prior demand on the corporation is not necessary, says: "It has been so held where the action was brought by a stockholder alleging that the board of directors, in issuing new stock, refused to issue to him his due proportion, and seeking to restrain them from issuing any more until

they should issue his due proportion to him; also where the object of the action was to compel a corporation to cancel certain shares alleged to have been unlawfully issued, and incidentally to restrain the holders of such shares from voting thereon, and, generally, where the object of the bill is to restrain the doing of *ultra vires* acts, because a single stockholder has a right to an injunction for that purpose." It was not proper for a bill like this to be filed by the corporation, hence a demand on it to bring this suit was not necessary.

It is next urged that appellant cannot have this relief, as he did not offer to return the bonds issued by the appellee. The wrongful acts of issuing the bonds and stock were the acts of county officers of Perry county and of officers of the corporation. The complainant was not a party to any of those wrongful acts. He at no time was benefited thereby, but was injured because of those wrongful acts. His bill was to have relief against those acts which were to his prejudice. He was not required to return those bonds, which he did not procure to be issued and of which he had no control, and which were issued for this stock which was prejudicial to him, before he could sue.

The decree of the circuit court granting the relief prayed for was proper. The judgment of the Appellate Court reversing that decree was error. The decree of the circuit court of Perry county is affirmed and the judgment of the Appellate Court for the Fourth District is reversed.                    *Judgment reversed.*

Mr. JUSTICE CARTER: I concur in the conclusions reached in this case but not in all that is said in the opinion.