*5⁻8 - 109*

STILLMAN S. FLAGG, APPELLANT, V. EVERETT S. FLAGG
ET AL., APPELLEES.

FILED FEBRUARY 7, 1894.   No. 5508.

1. **Supplemental Answer:** NOTICE.   A district court, on motion, may permit a defendant to file a supplemental answer, setting up facts material to his defense which have occurred subsequent to the filing of the original answer.   Notice of the motion should be served on the adverse party; but the failure to give notice is not reversible error, where the application is presented in open court in the presence of the other party or his attorney of record, and the order is granted without any objection being urged that notice was not served.

2. **Judgment:** EXPIRATION OF LIEN: EFFECT OF EXECUTION.   A judgment becomes dormant and ceases to be a lien on the real estate of the judgment debtor in five years from the date thereof, unless an execution is sued out on such judgment within said period.   In case an execution is issued and returned in such time, it will continue the lien of the judgment for five years from the date of such execution.

3. ———: ———.   The commencement of an action by a judgment creditor within five years from the date of his judgment to subject real estate of the defendant to the payment of the judgment, and the pendency of such action after such period, will not have the effect to prevent the judgment from becoming dormant or operate to prolong the lien of the judgment.

4. **Dormant Judgments:** LIENS.   When a judgment becomes dormant, its lien is lost as against a mortgage executed by the judgment debtor and recorded during the continuance of the judgment lien.

APPEAL from the district court of Douglas county. Heard below before IRVINE, J.

*Howard B. Smith,* for appellant.

*Bradley & De Lamatre* and *F. A. Brogan, contra.*

NORVAL, C. J.

The facts in the case, so far as necessary to be stated for a proper understanding of the questions presented for de-

cision, are as follows : On the 10th day of September, 1885, the defendants Everett S. Flagg and Ada E. Flagg executed and delivered to plaintiff a mortgage on certain real estate situate in the county of Douglas, to secure the payment of two promissory notes of said Everett S. Flagg for $900 and $1,100, respectively, bearing six per cent interest from date, which mortgage was duly recorded on September 11, 1885. On September 26, 1885, Horst & Riddell recovered a judgment against E. S. Flagg, before a justice of the peace of Douglas county, for the sum of $133.31 debt, and costs of suit, a transcript of which judgment was filed in the district court of said county on October 13, 1885. On the 17th day of November, 1885, W. J. Welschans & Co. obtained a judgment in the county court against Everett S. Flagg for $215.46 and costs, and on the next day a transcript of said judgment was filed in the district court of said Douglas county. On November 16, 1885, H. Westerman & Co. recovered a judgment in the county court against E. S. Flagg in the sum of $109.36 and costs, and three days later a transcript of said judgment was filed in the office of the clerk of the district court of Douglas county. On December 12, 1885, D. M. Steele & Co. recovered a judgment in the district court of Douglas county against Everett S. Flagg for the sum of $441.46 and costs; and on the 13th day of December, 1885, Ernest Peycke et al. recovered a judgment in the same court against said Flagg for $355.05 and costs. All of said judgments have been duly assigned to the plaintiff and appellant. No execution has been issued on either of said judgments, nor have the judgments been revived. On the 18th day of April, 1888, the defendants Everett S. Flagg and Ada E. Flagg executed and delivered to the defendant C. W. Conkling a mortgage upon the real estate described in plaintiff's mortgage, to secure the payment of three promissory notes executed by said Everett S. Flagg, aggregating $3,350, all drawing interest at the rate of ten per cent per annum from

Flagg v. Flagg.

date, which mortgage deed was duly filed and recorded the next day. On the 8th day of February, 1890, plaintiff brought this action in the court below, setting up in his petition his mortgage and the aforesaid described judgments, praying a foreclosure of the mortgage, and that the proceeds arising from the sale of the premises, after the payment of the costs of suit, be applied in payment of the amount found due upon the mortgage, and the surplus, if any, in satisfaction of the judgments. On the 22d day of March, 1890, the appellee Conkling filed an answer and cross-petition, setting up his mortgage and praying a foreclosure thereof, and that the lien of his mortgage be decreed to be junior only to the lien created by plaintiff's mortgage. On the 26th day of May, 1891, by leave of court, Conkling filed a supplemental answer, alleging therein that since the filing of his original answer no execution had been issued on either of the judgments set out in plaintiff's petition, and that said judgments were barred and did not constitute a lien upon the lands in controversy, with prayer that Conkling's mortgage be decreed a lien paramount to that of said judgments. Upon the trial in the court below a decree of foreclosure of both mortgages was rendered, establishing plaintiff's mortgage as a first lien, Conkling's mortgage a second lien, and the judgments a third lien. From this decree plaintiff appeals, claiming that the judgments are liens superior to the lien of the mortgage of appellee Conkling.

The first question submitted for our consideration is, did the trial court err in permitting defendant Conkling to file a supplemental answer? Section 149 of the Code of Civil Procedure provides: "Either party may be allowed, on notice, and on such terms as to costs as the court may prescribe, to file a supplemental petition, answer, or reply, alleging facts material to the case, occurring after the former petition, answer, or reply." It is not denied that under the foregoing provision a district court has the power to

Flagg v. Flagg.

permit either party to a cause to file a supplemental plead-
ing, inserting therein material matters which have arisen
subsequent to the filing of the original pleading; but it is
insisted by counsel for the plaintiff that notice of an appli-
cation for leave to file such a pleading is a condition pre-
cedent; and further, that it was an abuse of discretion in
the court allowing a supplemental answer to be filed in this
case. The statute seems to contemplate that notice of the
filing of a supplemental pleading shall be given. Undoubt-
edly such is the better practice. In the case under consid-
eration it does not appear whether or not any notice of the
application was served upon the plaintiff, but the record
does disclose that plaintiff was present in court when the
order complained of was made, and that he excepted to the
order. It not appearing that any objection was at the time
urged on the ground that no notice of the motion for leave
of the court to file had been served, we must regard that
written notice, if not given, was waived. Plaintiff had
actual knowledge of the object of the motion and appeared
and resisted the granting thereof. He could not have done
more had written notice been served. There was no abuse
of discretion in granting the order in question. The mat-
ter set up in the supplemental pleading occurred after the
original answer was filed, and was material to be consid-
ered in determining the case. When the first answer was
filed the judgments described in plaintiff's petition were not
barred, but having since become dormant it was entirely
proper to bring the same to the attention of the court by
supplemental pleading. Defendant was not guilty of
laches in not filing his supplemental pleading sooner,
since the statute of limitations did not run against the last
judgment until in December, 1890, and the supplemental
answer was filed in May following, or nearly a year before
the cause was tried in the court below.

The remaining question in the case is whether appellees'
mortgage is a second lien upon the premises and superior

to plaintiff's judgments? At the time the action was brought the judgments described in the petition were valid and subsisting liens upon the real estate in controversy, superior to the lien of the Conkling mortgage, and retained their priority unless the liens of the judgments were lost by reason of the judgments becoming dormant during the pendency of the action.  Section 482 of the Code provides: "If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out the writ of execution, such judgment shall become dormant and shall cease to operate as a lien on the estate of the judgment debtor."   In construing a statute where the meaning is not clear, the rule is to give it such interpretation as will comport with what is supposed to have been the purpose or intention of the legislature; in other words, where the intention is manifest, it will control, rather than the language employed by the law-givers.   In the section quoted, however, there is no ambiguity; no words employed which operate to defeat the clear and manifest intention of the enacting power.   In fact, there is no room for construction.   We must, therefore, apply the section according to its literal meaning.   It is obvious that in case a judgment creditor fails for more than five years after the date of his judgment to sue out an execution, the judgment becomes dormant and ceases to be a lien upon the real estate of the defendant.   We see no escaping the conclusion that where a judgment becomes dormant its lien is thereby lost as against a mortgage made by the debtor during the life of the judgment. (Black, Judgments, sec. 458; *Pennsylvania Agricultural & Manufacturing Bank v. Crevor*, 2 Rawle [Pa.], 224; *Ruth's Appeal*, 54 Pa. St., 173; *Duffy v. Houtz*, 105 Pa. St., 96; *Titman v. Rhyne*, 89 N. Car., 64; *McCarty v. Ball*, 82 Va., 872; *Halsey v. Van Vliet*, 27

Kan., 474; *Newell v. Dart,* 28 Minn., 248; *Bish v. Burns,* 7 Ohio Cir. Ct. Rep., 285; *Miner v. Wallace,* 10 O., 403; *Tracy v. Tracy,* 5 McLean.[U. S.], 456.)

*Tracy v. Tracy* was where a judgment debtor executed a mortgage on certain real estate during the continuance of the lien of the judgment. Subsequently the judgment became dormant, which was revived after the mortgage was given. It was held that the revival of the judgment did not affect prior liens, and that the mortgage lien was superior to that of the judgment.

In *Miner v. Wallace, supra,* the court in the syllabus say: " Where real estate is subject to two liens, the elder a judgment and the younger a mortgage, if the judgment lies dormant five years its priority is lost and the mortgage takes the estate."

Counsel for plaintiff does not question that ordinarily a judgment, after the expiration of five years, ceases to be a lien upon the lands of the defendant, unless execution has been issued thereon within that period; but he insists that the rule does not apply here, inasmuch as plaintiff's judgments became dormant during the pendency of this action, and *Dempsey v. Bush,* 18 O. St., 376, is relied on as sustaining the contention. An examination of the decision will disclose that it does not cover the question here presented. The report of the case shows that Salmon W. Bush was the owner of eighty-eight acres of land in Ross county. In November, 1859, the executors of Will Ross obtained a judgment against Bush in the court of common pleas of Ross county for $3,421.49, which became a lien upon said real estate. On February 5, 1861, an execution was sued out on said judgment and levied on said land, and then returned without sale. In April, 1860, Bush executed to Richard Dempsey a mortgage upon the said real estate to secure the payment of $4,000, all the parties to the judgment agreeing that the mortgage should stand as a lien prior to the judgment. Subsequently, on February

18, 1861, Bush executed to James Dean and Aaron Stookey a further mortgage on the eighty-eight acres, which was duly recorded.  On September 20, 1865, Dempsey brought suit to foreclose his mortgage and to ascertain and marshal the liens upon the mortgaged premises, all subsequent lien-holders being made defendants.  The equitable owners of the judgment filed an answer and cross-petition in the action, admitting the priority of Dempsey's mortgage and setting up the Ross judgment.  On November 22, 1865, a decree was entered, finding the amount due on plaintiff's mortgage, and the land was ordered sold by the sheriff. Out of the proceeds of the sale his mortgage was to be first paid and the residue of the proceeds to be brought into court to be distributed among the subsequent lien-holders, according to priority.  An order of sale was issued in January, 1866, and the land sold by the sheriff on February 24, 1866.  Dempsey's claim was paid off and the residue of the proceeds was brought into court for distribution among the other lienors.  After the order of sale was issued, but before the sale, James Dean, by counsel, filed an answer setting up his mortgage and alleging that the Ross judgment had become dormant, no execution having been issued thereon since February 5, 1861, and no revivor having been had.  The supreme court of Ohio held that the owners of the judgment did not lose their right to share in the distribution of the money arising from the sale of the land by reason of the judgment becoming dormant during the pendency of the suit.  It will be noticed that the judgment did not become dormant in the case alluded to until after the decree was rendered and the order of sale had been issued.  In this important particular that case differs from the one at bar.  Here the judgment became dormant long before the decree of foreclosure was rendered.  The decree in the Ohio case fixed the status of the parties, and it was quite immaterial that the judgment afterwards became dormant.  The fact that the judg-

ment ceased to be a lien after the decree was rendered could not aff. ct the right of the judgment creditor to participate in the distribution of the proceeds of the sale made in pursuance of that decree. The property was ordered sold for the purpose of paying the judgment and other liens on the land.

Day, J., in speaking of the case of *Dempsey v. Bush*, in his opinion in *Bish v. Burns*, 7 Ohio Cir. Ct. Rep., 289, says: "We think the fair inference to be drawn from the case is that the supreme court is of the opinion that the pendency of the action and the actual disposing of the property, by sale, on the court's order, preserved the judgment from dormancy, and maintained its lien and right to be paid from the proceeds of the sale of the property so appropriated for that purpose."

Judgments are liens only by force of statute. A judgment of the district court in this state is a lien upon the real estate of the debtor within the county, from the first day of the term of court at which it was entered; and such lien remains in force for five years from the date of the judgment. In order to continue the lien beyond this period the statute, in express terms, requires that an execution must be issued within the life of the judgment. The issuance of an execution within five years prolongs the judgment and preserves the lien of the judgment for five years longer. The bringing of this action was not equivalent to, nor did it take the place of, the issuing of executions upon the judgments. The pendency of this suit did not prevent plaintiff from suing out executions. (See *Bish v. Burns, supra*.)

*Newell v. Dart*, 28 Minn., 248, is analogous to the case at bar. That was an action in the nature of a creditor's bill to subject property of the judgment debtor to the payment of a judgment recovered against him. By the statute of Minnesota, a judgment recovered in that state survives, and the lien thereof continues, for the period of ten years, and

no longer. There the action was brought within that period; but before a decree was rendered therein, plaintiff's judgment, which by the suit he was seeking to enforce, became dormant. It was contended in that case, as here, that the pendency of the action had the effect to keep alive the judgment. The court held that the commencement of the suit before the judgment was barred, and the pendency thereof afterwards did not operate to continue the judgment in force beyond the statutory period.

It is argued that the action may be treated as one to recover on the various judgments held by plaintiff, and as they were in full force when this suit was commenced, the statute of limitations ceased to run at the date of the summons which was served on the defendants. In no proper sense can this be regarded as a suit at law to recover a judgment upon plaintiff's judgments. It is merely an equitable action brought to foreclose a mortgage, and for the marshaling of liens upon the mortgaged premises. But if we regard this as an action at law upon domestic judgments, plaintiff would stand in no better position. The commencement of the action would prevent the running of the statute of limitations against the causes of action,—the judgments,—but it would not preserve the liens of the judgments after they became dormant. Had a new judgment been obtained by plaintiff, such judgment would have been a lien only from the first day of the term of court, which would have been subsequent to the recording of Conkling's mortgage; hence, the mortgage would have been the prior lien. Our conclusion is that plaintiff's judgment became barred and ceased to be a lien as against Conkling's mortgage, notwithstanding the pendency of this action. The decree of the court below is

AFFIRMED.