HANSEN'S EMPIRE FUR FACTORY, Plaintiff, v. F. TEABOUT, et al., J. J. LONG, Administrator, Etc., ANGIE VALLEAU, Sole Heir, Etc., Defendants and Appellees, E. S. JAFFRAY & COMPANY, WILLIAM YOUNG & COMPANY, and HENRY WELSH, Interveners and Appellants, H. F. BROWN, et al., Interveners and Appellees, and KEITH BROTHERS, Plaintiffs, v. THE SAME DEFENDANTS, Appellees, THE SAME INTERVENERS, Appellants, THE SAME INTERVENERS, Appellees.

**Execution Against Decedent:** JURISDICTION. Since under McClain's Code, section 4321, none but the court which rendered a judgment can award execution against one deceased after its rendition, the judgment creditor cannot enforce payment of the judgment out of the deceased's real estate in a county other than that in which the judgment was rendered.

**Attack on Execution Sale:** EXPIRED JUDGMENT LIEN. Since a junior judgment creditor has no right to redeem from an execution sale after ten years from the date of his judgment, an action by him, after ten years have expired, to subject real estate to the payment of his judgment, and to redeem from execution sales because of defects therein, is barred.

**Estates:** FILING CLAIMS: *Limitation of action.* Filing and allowance of a claim of a judgment creditor against the debtor's estate gives the former no additional right against the real estate of the decedent, when the lien of his judgment thereon has expired by statutory limitation.

SAME. An action to subject decedent's real estate to the payment of judgments rendered before his death and to redeem from execution sales thereof because of alleged defects cannot be maintained

after the expiration of ten years from the rendition of the judgment declared upon.

**SAME:** *Executors and administrators.* A judgment creditor who has filed his claim with the debtor's administrator cannot, after the expiration of the lien of his judgment upon the lands of the decedent, proceed, independently of the administrator, to subject the property to the payment of his judgment.

**Limitation of Actions:** JUDGMENTS *Filing claims.* A judgment against one who has since deceased may be enforced within ten years from the date of its recovery, against the real estate upon which it is a lien, without filing it as a claim against the estate.

**Executors and Administrators:** ACTION FOR CREDITORS: *Laches.* An action by a judgment creditor to enforce his lien against a decedent's real estate cannot be maintained independently of the administration proceedings, when the administrator has not refused to bring it, and there has been great delay, and it does not purport to be for the benefit of all the creditors.

**Suit by Administrator for Creditors:** ADJUDICATION. A creditor in whose behalf an administrator brought suit to set aside a conveyance as fraudulent, and to obtain a decree that the grantee held the property in trust for the payment of debts due from the estate, is concluded, by an adverse determination of such suit, from thereafter asserting that the land should be sold to pay his claim as one of the creditors of the estate.

**Estoppel:** LACHES. One who attacks a defective sheriff's sale more than ten years after it was made is guilty of such laches as will prevent him from being heard, in the absence of any excuse for not sooner bringing his suit.

LADD, J., took no part.

*Appeal from O'Brien District Court.*—HON. S. M. LADD, Judge.

THURSDAY, JANUARY 20, 1898.

THE two cases entitled as above, involving the same issues, were tried together in the lower court, and will be disposed of as one in this court. They are suits in equity brought by two judgment creditors of F. Teabout and Teabout & Valleau to subject certain real

estate, the title to which is in Angie Valleau, to the pay-
ment of these judgments, on the ground that said Val-
leau held the title in trust for the benefit of Teabout.
Valleau denied the alleged trust, and pleaded that at
the time of the death of Teabout, which occurred in
March, 1888, she was the owner of the real estate, and
that she still held the absolute title thereto.    E. S.
Jaffray & Co., William Young & Co., and Henry Welsh
intervened, setting forth in their petitions the fact that
they were judgment creditors of Teabout, having
recovered their judgments before his death,—Jaffray
& Co. in the United States circuit court for the Northern
district of Iowa, Young & Co. in the circuit court of
O'Brien county, and Welsh in the circuit court of Win-
neshick county.   They each and all alleged that Valleau
held title to the land under and by virtue of an execu-
tion sale of the lands in the case of Hemphill, Hamlin
& Co. against Frank Teabout *et al.*, held on the seven-
teenth day of May, 1882, and that the execution sale and
deeds thereunder were and are void for the reason that
the land so sold, comprising about two thousand six
hundred acres, was purchased by one Potts, an attorney
for plaintiff in execution, for the nominal sum of seven
hundred and eighty-two dollars, whereas it was in truth
worth thirty thousand dollars; that a part of the land
so sold was the homestead of Teabout, who then occu-
pied the same with his family; that the sheriff did not
cause the said homestead to be marked off, platted, and
recorded as by law provided; that he sold the entire
real estate   *en   masse*,   without first offering it in
smaller tracts, and without first offering all other
real estate before selling the homestead; that Pitts
transferred the certificate of purchase to one Bullis,
who took and received from the sheriff a deed to the
land; that Bullis was the then attorney for Teabout;
that he furnished no part of the money for the purchase
of the certificate; and that Bullis thereafter quitclaimed

the said real estate to defendant Valleau without any
consideration having been paid therefor by her.　Inter-
veners further pleaded the death of Teabout, and the
appointment of one J. J. Long as his administrator, and
further alleged that the personal estate of the deceased
was insufficient to pay his debts.　They asked that the
sheriff's sale and deeds be set aside, that Angie Valleau
be held to account for the rent of the real estate, that the
property be decreed to be that of Teabout and subject to
the interveners' judgments, that they be permitted to
redeem from the sale under execution, and that execu-
tions issue for the sale thereof.　Defendant Angie
Valleau answered these petitions, denying the alleged
defects in the sheriff's sales and deeds, and denying that
she held the title in trust, or that she paid no consider-
ation therefor.　She further alleges that after the death
of Teabout these intervenors filed their claims with
his administrator, and that thereafter—it being discov-
ered that the personal assets were insufficient—the
administrator brought suit to subject the real estate
to the payment of these and other claims, alleging, as
one of the grounds therefor, the same matters as are set
forth in the interveners' petitions; that this action was
tried, resulting in a decree for this defendant; and that
such determination was a final adjudication of all the
matters complained of by interveners.　Defendant
further pleaded the five-year statute of limitations, the
ten-year statute, and laches on the part of the inter-
veners.　She also pleaded that, as more than ten years
had elapsed since interveners had obtained their judg-
ments, they ceased to be liens upon the land, and that
the same could not be enforced against it; that inter-
veners had waived their liens, and could only enforce
their claims through the administrator of Teabout.
She also pleaded that the district court had no jurisdic-
tion to award execution on the Jaffray and Welsh judg-

ments, and that the court which awarded the judg-
ments, alone, could do that. She also pleaded a counter-
claim, and asked that her title be quieted as against the
interveners. In reply interveners denied that they had
filed their claims with the administrator before he com-
menced his suit to subject the lands, denied that said
suit was based upon the same grounds as their interven-
tion, and further denied the application of the statutes
of limitation; or that they had been guilty of laches.
On these issues the cases were tried to the court, result-
ing in a decree subjecting the lands to the payment of
plaintiffs' judgments, and dismissing the petitions of
intervention. Interveners, Jaffray & Co., Welsh and
Young & Co., appeal.—*Affirmed.*

*H. E. Long* for appellants.

No appearance for appellees.

DEEMER, C. J.—The trial court found some of the
facts which we believe to be established by the evidence,
and which we here adopt as a partial basis for this
opinion. They are as follows: "Frank Teabout,
defendant in this action originally, died in the
year 1888, intestate, leaving no widow, and leav-
ing defendant Angie Valleau, his only child and heir at
law, being the owner of the following described real
estate, situated in O'Brien county, Iowa, to-wit: The
southeast one-fourth and the northeast one-fourth of the
northeast one-fourth and the southwest one-fourth of
the northeast one-fourth, all in section 35, and the west
one-half of the northwest one-fourth and the southeast
one-fourth of the northwest one-fourth and the
west one-half of the southwest one-fourth, all in
section 36,—all being in township 97 north, of
range 40 west fifth P. M. That on the first day
of May, 1883, while said Teabout was the owner of

said real estate, the plaintiff herein obtained a judg-
ment in the district court of O'Brien county, Iowa, for
the sum of one thousand five dollars and fifty cents, with
interest thereon at six per cent. per annum from said
date, and costs of suit, taxed at $————.   That under
and by virtue of an execution issued upon a certain
judgment in favor of Hemphill, Hamlin & Co. against
said Teabout, recovered in this court on April 28, 1881,
for six hundred and forty-seven dollars and costs, the
sheriff of said O'Brien county, Iowa, levied upon two
thousand six hundred acres of real estate, including
the real estate hereinbefore described; and, certain
town lots, and thereafter, on or about June 19, 1882,
sold same, all in bulk, without first offering same in
smaller tracts, for the full sum of seven hundred and
eighty-two dollars and thirty cents, to one G. W. Pitts,
who thereafter assigned so much of the certificate of
purchase to one Bullis as covered and described the
real estate in question in this action (including about
nine hundred and sixty acres of other land not in con-
troversy herein) and that of Hansen's Empire Fur
Factory against same defendants for the sum of five
hundred and sixty dollars and eighty-five cents; the
said money for the payment thereof having been furn-
ished by the defendant Angie Valleau, herein, and he
having thereafter made to her a quitclaim deed there-
for without further consideration.   And the court
further finds said sheriff's sale and deed were invalid,
and conveyed no titel to said Bullis or his grantee, Angie
Valleau, defendant herein.   The court further finds
that on August 8 and September 20 and 21, 1883,
respectively, defendant Angie Valleau paid to the
clerk of this court the full sum of five thousand one hun-
dred and twenty-five dollars to redeem the lands here-
inbefore described, from sheriff's sale upon execution of
a judgment in favor of Field, Lindley & Co. against
Frank Teabout, under a foreclosure of mortgage upon

said real estate, with other real estate, paramount in lien to any of said judgments upon said lands; and under said redemptions sheriff's deeds were made to said defendant Angie Valleau, which deeds were invalid, and conveyed no title as against this plaintiff. The court further finds that plaintiff's said judgment was a lien upon said real estate junior to the judgments in favor of Field, Lindley & Co. and Hemphill, Hamlin & Co. against said Teabout. The court further finds that the personal estate of said F. Teabout, deceased, is, and has been ever since his death, insufficient to satisfy any of the judgments herein set forth in favor of plaintiff and interveners." On this state of facts Valleau was ordered to pay plaintiff's judgment within ninety days, and that if she did not do so the sheriff's sale and deeds under which she claimed would be set aside, and general execution would issue for the sale of the land to pay plaintiff's judgment, as well as to satisfy the amount Valleau had advanced to procure the sheriff's certificate and to redeem from the foreclosure, and, as we have said dismissed the petitions of intervention. We are not favored with an argument for appellees, and have no means of knowing upon what theory the court acted in reaching his conclusions. It is apparent, however, that it found in favor of Valleau on one or more of the defenses interposed by her; and we turn, then, to a consideration of the matters so presented.

And first as to the rights of Welsh: He recovered his judgment in the circuit court of Winneshick county on the sixth day of September, 1881, and filed his petition of intervention on October 27, 1893. He did not file his claim with the administrator of Teabout's estate, and therefore must rely solely upon his judgment. We have heretofore held, and it is now the settled rule in this

state, that while a judgment against one who has since deceased may be enforced against the real estate upon which it is a lien without filing it is a claim against the estate, yet this must be done while the judgment lien exists. *Baldwin v. Tuttle*, 23 Iowa, 66; *Davis v. Shawhan*, 34 Iowa, 91; *Boyd v. Collins*, 70 Iowa, 296. In the case of *Davis v. Shawhan* we held that, if one seeks to enforce payment of a judgment out of real estate of one deceased, he must do so before his lien expires, and that he cannot do so afterwards. The Welsh judgment ceased to be a lien upon the land at the expiration of ten years from its date (Code 1873, section 2882), and intervener has no remedy against the real estate.

Young & Co. obtained their judgment on September 28, 1882, in the circuit court of O'Brien county, and they filed their petition of intervention on August 15, 1893, more than ten years after they recovered judgment. They are in the same position as intervener Welsh, except that they filed their claim with the administrator December 9, 1892, and the same was allowed by order of the district court of O'Brien county on December 13, 1892. It is apparent that the lien of their judgment had expired when they filed their petition of intervention. The filing and allowance of their claim gave them no additional right as against the real estate, for, as said in *Davis v. Shawhan, supra:* "A judgment creditor has two remedies, or rather, has recourse to two funds. He may either seek payment out of the personal assets, or he may enforce his lien on the real estate. * * * If he adopts the former, he must file his claim, duly proved, within the time limited by the law." "He has no special claim to have his judgment satisfied out of the real estate, and can only seek payment * * * from the personal assets in the

hands of the administrator, in which case the real estate *might* in the event of inadequacy of the personal assets, be subjected to the payment thereof. * * *" We may also add, in this connection, that such action must as a general rule, be brought by the administrator, and, save as to exceptional cases, within the year allowed for the filing of claims. *Creswell v. Slack*, 68 Iowa, 110; *Minear v. Hogg*, 94 Iowa, 641. Creditors must, as a rule, have a lien before filing a bill in equity to subject real estate to the payment of their claims. See Wait, Fraud Conveyance, section 73, 75, 87; *Buchanan v. Marsh*, 17 Iowa, 494; *Goode v. Garrity*, 75 Iowa, 713; *Faivre v. Gillan*, 84 Iowa, 573. We are aware that there are exceptions to this rule, as where one has made a fraudulent conveyance of his property, and thereafter dies, his creditors may, under certain circumstances, proceed to subject the property without first obtaining judgments upon their claims. But this exception has reference to claims not reduced to judgment during the lifetime of the debtor, and also has reference to claims filed at a proper time with the representative of the estate. Moreover, as we shall see, these petitions of intervention are not creditors' bills, but are attempts to subject property to the payment of judgment liens.

Jaffray & Co. obtained their judgment in the United States circuit court for the Northern district of Iowa, western division, on the twenty-second day of May, 1882, and they filed their petition of intervention on May 22, 1892, which was within ten years from the time the judgment was rendered. It also appears that they filed their claim with the administrator, Long, and secured the allowance thereof on the twenty-sixth day of December, 1888. It further appears that the action brought by Long, administrator, against Valleau, to

subject the real state to the payment of debts was for the special benefit of this intervener.  See *Long v. Valleau*, 87 Iowa, 686.. As the judgment ceased to be a lien the next day after the filing of the petition of intervention, it could only be enforced in a suit independent of the administration proceedings, by the levy of an execution upon the real estate; and, as the judgment debtor is dead, a renewal by *scire facias* is necessary in order that the lien may be continued and enforced.  In the case of *Albee v. Curtis*, 77 Iowa, 647, we held that the issuance of an execution did not extend the lien of a judgment, that the lien was statutory, and that "the mere lapse of time annihilates the lien of a judgment."  See, also, *Lakin v. C. H. McCormick & Bro.*, 81 Iowa, 548, where it is said:  "If he seeks the advantages of his lien, he should not defer his action until it is too late to perfect his rights thereunder.  The law fixes the period, and provides the means for rendering his lien effectual.  If he neglects action until too late to complete his work within the period, then the right to make the levy is a barren one, —in effect, no right."  See, also, *Flagg v. Flagg*, 39 Neb. 229 (58 N. W. Rep. 109); *Denegre v. Haun*, 13 Iowa, 245; *Bertram v. Waterman*, 18 Iowa, 529; *Hendershott v. Ping*, 24 Iowa, 134; *Boyle v. Maroney*, 73 Iowa, 70.  *Postlewait v. Howes*, 3 Iowa, 364, is not in conflict with these subsequent cases.  If, then, Jaffray & Co.'s judgment ceased to be a lien at the expiration of ten years from its date, and if the issuance of an execution upon *scire facias* will not renew it, it is clear that they have no right to proceed, independent of the administrator, to subject the property to the payment of their judgment.

In so far, then, as these interventions are actions brought by judgment creditors to enforce their claims and liens against property of one deceased after the rendition of their judgments, they are barred by reason

of the statute limiting judgment liens to the period of
ten years. It may also be said that Jaffray &
Co. and Welsh are not in position to enforce their
liens, as they are required to have their right to
executions renewed because of the death of the judg-
ment debtor, and this they cannot do except in the
court where the judgments were rendered. See
McClain's Code, section 4321. Appellants' counsel con-
tend that this section, as printed in McClain's Code, is
incorrect, that the reading as given in the original Code
of 1873 is correct, and that interveners had the right
to have execution awarded in the O'Brien county dis-
trict court. We find that Mr. McClain has properly
stated the facts with reference to the passage of this
section of the Code, and that his rendering is the cor-
rect one. The original bill is as stated by Mr. McClain,
and it follows that none but the court which renders the
judgment has power to award execution against one
deceased since the rendition thereof. This, in itself,
would be a sufficient answer to the claims of interveners
Jaffray & Co. and Welsh, for it must be remembered
that this is not an action to set aside conveyances made
by deceased because of fraud, but to subject certain
real estate to the payment of judgments rendered before
his death, and to redeem from execution sales
thereof because of certain defects therein. In
the case of *Albee v. Curtis, supra,* we held that a
junior judgment creditor had no right to redeem after
the expiration of ten years from the rendition of his
judgment. See, also, *Long v. Mellet,* 94 Iowa, 548.
Young & Co.'s claim is clearly barred by the statute.

Long, as administrator, brought his suit to subject
this same real estate to the payment of claims filed
against the Teabout estate, claiming that the convey-
ance to Angie Valleau was fraudulent, and that she

held the same as a resulting or implied trust for the Teabout estate, and that the personal estate was insufficient to pay the debts. He was defeated in his suit, and the decree rendered in that case is binding upon the creditors whom he represented. It is settled in this state that an administrator may bring such a suit. *Cooley v. Brown*, 30 Iowa, 470; *Doe v. Clark*, 42 Iowa, 123; *Harlin v. Stevenson*, 30 Iowa, 371. As he had this authority, the parties for whose benefit the suit was brought are concluded thereby. *Perry v. Mills*, 76 Iowa, 622; Freeman, Judgments, (4th ed.) section 163; 2 Van Fleet, Former Adjudication, 925; *Mehlhop v. Ellsworth*, 95 Iowa, 657. Interveners Jaffray & Co. are clearly concluded by this determination, from claiming that the land should be sold to pay their claim as one of the creditors of the estate. Young & Co. are also concluded, if it be held that they filed their claim in time to be entitled to any of the general assets. In view of our holding, it is unnecessary to consider whether or not Welsh is bound by the decree rendered in that case.

Let it be conceded, however, that this case presents issues, different from those presented in the case brought by the administrator. What, then, is the situation? Clearly, those creditors who filed their claims with the administrator are estopped from claiming that the conveyance from Teabout to Valleau was fraudulent. They must recover, then, upon the theory that they are judgment lien-holders (which we have seen they cannot do), or upon the proposition that they are creditors of Teabout's estate, that the personal assets are insufficient to pay his debts, and that they are entitled to have the real estate sold, or a right of redemption given, to pay their claims. There are several insuperable objections to this last claim: First, the administrator must, as a general rule, bring such an action, and it must, ordinarily, be brought within the year allowed for filing claims. The

administrator brought a suit for this purpose, and was defeated. Again, the administrator did not refuse to bring such suit, and no reason is given why the creditors proceed, instead of the administrator. Moreover, no excuse is given why such suit, even if it could be brought, was delayed for nearly five years from the date of Teabout's death. A still further objection is found in the fact that the actions are and were independent, and not for all the creditors,—thus evidencing the fact that the suits are for the purpose of enforcing liens independent of the administration proceedings.

Another cogent reason why interveners cannot recover on any theory is found in the fact that they have been guilty of such laches as that they should not be heard to complain. The sheriff's sales which they attack were made more than ten years ago. They were and are defective, because the land was sold *en masse*, and because the homestead was not platted and set apart. They offer no excuse for not sooner bringing their suits, and it seems to us they ought not now to be heard to complain. *Williams v. Allison*, 33 Iowa, 278; *Coriell v. Ham*, 4 G. Greene, 455.

It is not necessary for us to determine whether the decree rendered by the court upon Long's application to sell was *res adjudicata* as to all matters which might have been pleaded in that case. The decree of the district court, in so far as the interveners are concerned, is right, and it is AFFIRMED.

LADD, J., took no part.