J. J. LONG, Administrator, Appellant, v. ANGIE
VALLEAU, Appellee.

| 87 | 675 |
|---|---|
| 96 | 179 |
| 87 | 675 |
| 104 | 369 |
| 87 | 675 |
| 118 | 132 |
| 87 | 675 |
| 121 | 443 |
| 123 | 510 |
| 87 | 675 |
| 126 | 589 |
| 87 | 675 |
| f133 | 66 |
| 87 | 675 |
| 137 | 584 |

1. Practice: TRIAL WITHOUT ANSWER: WAIVER. Where· after an
amendment to his petition the plaintiff proceeded to the trial of the
questions thereby presented without answer, and both parties treated
the averments of the amendment as denied, and the absence of any
answer to the amendment was not called to the attention of the court,
held, that the right to have the allegations of said amendment consid-
ered as admitted under the provisions of section 2712 of the Code
was waived.

2. Trusts: ACTION TO RECOVER PROPERTY OF TRUSTEE: STATUTE OF
LIMITATIONS. Where a father conducted a business in his daughter's
name, leased lands, collected rents, borrowed money, purchased real
estate, and used all of said property as if it were his own, except
that he transacted the business generally in the daughter's name,
held, in an action brought by the administrator of the father's estate
to recover the property so held by the daughter as belonging to said
estate, that if said property was not owned by the daughter it was held
by· her in trust, and said trust not having been repudiated during the
life of the father, and five years not having elapsed since his death,
said action was not barred.

3. ———: ———: LACHES. Where such action is not barred by the
statute of limitations, the relief asked will not be denied on the
ground of laches because of the lapse of more than five years ·since
the cause of action accrued, where it appears that the trustee has not
been prejudiced by the delay.

4. Practice in Supreme Court: QUESTIONS CONSIDERED ON APPEAL.
Questions not raised in the trial court will not be considered upon
appeal.

5. Former Adjudication: PARTIES. The title of the defendant to
the property in controversy was formerly determined in the defend-
ant's favor in an action to which all the persons interested with· the
plaintiff in this action were parties, save one, who was a creditor of
the father's estate to the amount of thirty-six thousand dollars, and
for whose benefit, in part, this action was commenced. Held, that
the plaintiff was not estopped by the judgment in the former action
from questioning the validity of the defendant's title.

6. Title to Real Estate: TRUSTS: EVIDENCE. A portion of the real estate in controversy was purchased at tax sale by one W. with money furnished by the defendant's father, and the tax certificates were afterwards assigned by W., at the father's request, to one H, who, after receiving tax deed thereto, conveyed to the defendant without consideration. *Held,* that said property was held by the defendant in trust for her father's estate.

7. ———: ———: ———. Certain other real estate in controversy was conveyed to the defendant by her mother, but the deed thereto was not signed by the father until after his wife's death, and the conveyance of his interest then was without consideration, and for the purpose of defrauding his creditors. *Held,* that said conveyance as to the dower interest of the father in said property was invalid as against the creditors of his estate.

8. ———: ———: ———. *A title to real estate will not be declared invalid because of its having been acquired through a purpose to defraud the creditors of the real owner, unless the evidence of the fraud is clear and satisfactory.*

9. Practice: ALTERATION OF RECORD BY COUNSEL. An attorney has no right, without leave of court, to alter the shorthand reporter's transcript of the evidence in a cause, even for the purpose of correcting errors, and making such transcript correspond with the facts proven as shown by the record.

UPON REHEARING.

Practice: PETITION TREATED AS DENIED ON TRIAL WITHOUT ANSWER: EFFECT. While allegations of an amendment to a petition, which are not controverted by a subsequent pleading, should, under section 2712 of the Code be deemed admitted, yet where such amendment is treated as denied on the trial by both plaintiff and defendant, and evidence is introduced under the issue thus presented, the plaintiff can.not on appeal claim that such allegations are to be deemed admitted under the above provision of the Code.

*Appeal from O'Brien District Court.* — HON. SCOTT M. LADD, Judge.

TUESDAY, MAY 9, 1893.

THIS is an action in equity against the defendant to discover alleged assets of the estate of one Frank Teabout, deceased, and to have her decreed to hold certain real property in trust for his estate. The

decree, in part, found for the plaintiff, and, as to some of his claims, his petition was dismissed. Both parties appeal.—*Modified and Affirmed.*

*H. E. Long,* for appellant.

*Milt. H. Allen* and *Levi Bullis,* for appellee.

KINNE, J.—As the pleadings in this case are voluminous, a condensed statement of the matters in issue will be made: The plaintiff, as administrator of one F. Teabout, deceased, charges that for some time prior to his death he had been indebted to divers parties to the amount of many thousand dollars; that during said years he carried on business in the name of the defendant, employing his own capital therein; that this was done in order to keep his property from his creditors; that the defendant is in possession of many thousands of dollars' worth of personal property, which she has appropriated to her own use, and which was in fact Teabout's property; that the defendant is the only child and daughter of F. Teabout and Emily Teabout, deceased, and that F. Teabout, prior to his death, made his home with said daughter; that in June, 1884, Emily Teabout, wife of F. Teabout, died, possessed of several thousand dollars' worth of personal property, leaving her husband and daughter surviving her; that F. Teabout conspired with the defendant for the purpose of cheating and defrauding his creditors, and failed and refused, prior to his death, to have set off to him his one-third share in his wife's estate, which share the defendant has appropriated. The defendant admits that F. Teabout died intestate, and was, for some time prior to his decease, indebted, in large sums, to divers persons; that he carried on business in the defendant's name, for her and with her money, and says that, by reason of the fact that he had used and appropriated her money to his own use, he was largely indebted to

her. Admits that Emily Teabout was the wife of F. Teabout, and mother of the defendant, and that she died in June, 1884; that all the personal property she had she gave to the defendant prior to her death; that the defendant is administratrix of her estate, which is unsettled; that said Emily executed a will, which has been lost, whereby she gave to the defendant all her property, real and personal; that said Emily, in her lifetime, paid certain debts of F. Teabout, amounting to more than his share in her estate; that said F. Teabout knew of said will and gift, and approved the same, and waived any claim on said Emily's estate; that the defendant has no assets in her hands belonging to the estate of F. Teabout. She denies all other allegations of the petition.

The plaintiff afterwards filed an amendment to his petition, wherein he charged that all the real estate held by the defendant, and its proceeds, were the property of F. Teabout, and that the title was placed in her name for the purpose of placing it beyond the reach of his creditors. He also sets out the names of several parties who have filed claims against the estate of F. Teabout, and which have been allowed, amounting, in the aggregate, to about fifty-five thousand dollars. It is averred that said indebtedness was contracted by him or by the firm of Teabout & Valleau, of which he was a member, from February 1, 1879, to October 1, 1880; that said claimants were all creditors of F. Teabout when the defendant took title to said real estate. The defendant denies all the allegations in said amendment not otherwise admitted, modified, avoided, or explained; admits she holds title to real estate, but says she holds the same *bona fide* and in her own right; admits the filing and allowance of the claims against F. Teabout's estate, and that said indebtedness was incurred by the firm of Teabout & Valleau, of which firm F. Teabout was a member, from February

1, 1879, to April 1, 1881. In the fifth division of her answer, the defendant says she is the sole heir of F. Teabout, and is his daughter. She then pleads that the title to all of the tracts of land mentioned in the plaintiff's petition and amendment was on January 5, 1883, and during F. Teabout's lifetime, adjudicated to be in the defendant's grantors, in a case wherein Charles Ray and others were plaintiffs, and Frank Teabout and others were defendants; that the plaintiffs in said case were the same parties as those for whose benefit this suit is prosecuted, and the claim made is the same; that all the rights of the defendant to said real estate were acquired by her from F. Teabout and other defendants in said case. She also pleads the five year statute of limitations, and avers that the plaintiff had knowledge and notice of all the claims and causes of action herein for more than five years prior to the bringing of this action. In another division of her answer, she pleads that the plaintiff has been guilty of such laches as should prevent a recovery. The plaintiff, for a reply, says he denies that the defendant holds said real estate *bona fide*, and in her own right; admits that Ray and others brought an action against Teabout and others, wherein a decree was entered against plaintiffs; denies all other allegations in said answer.

The plaintiff afterwards filed a further amendment to his petition averring that on June 19, 1882, F. Teabout owned certain lands (describing them); that they were sold at sheriff's sale, and purchased by G. W. Pitts; that June 1, 1883, Pitts assigned the sheriff's certificate therefor to Levi Bullis for an alleged consideration of five hundred and sixty dollars and eighty three cents, and afterwards the sheriff executed a deed to Bullis for said lands. It is averred that Bullis paid no part of the consideration for said lands; that Teabout paid therefor, and the title was taken in Bullis'

name for the benefit of Teabout; that in August, 1883, said Bullis and wife deeded the lands to the defendant; that the defendant paid nothing therefor, and knew when she took title that F. Teabout had furnished the money to pay for the land. It is also alleged that in November, 1883, F. Teabout owned a mortgage and note for four thousand, six hundred and forty-six dollars, executed by Warren Walker and wife to Emily Teabout to secure the payment of that amount of money upon the purchase of certain lands, which were purchased by Walker, and the deed taken in the name of one Winterble from F. Teabout; that said mortgage was held in trust under the name of Emily Teabout; in payment thereof, Walker conveyed certain lands to the defendant; that said conveyances were made to the defendant without consideration, and in fraud of creditors of F. Teabout. It is also claimed that, in 1882 and 1883, Walker purchased certain tax certificates on lands known as the "Wellington Lands," which certificates were paid for by F. Teabout, and assigned, and, by request of Teabout, deeds taken therefor by one Harker; that Harker had no interest therein, and in 1883 quitclaimed same to the defendant, she knowing that F. Teabout was the actual owner of the lands. Another transaction, somewhat similar, is set out. The court below found that the Harker tax deeds were taken in trust for F. Teabout, and that he owned the land described therein, at his death; that Emily Teabout, at her death, owned certain real estate in which F. Teabout had a one-third interest in value; that the defendant had collected rents of real estate belonging to F. Teabout, in the sum of two hundred and twenty-five dollars; that a mortgage given by one Lyons was the property of F. Teabout, and which the defendant had collected, amounting to two hundred and forty dollars and twenty-one cents. As to all the other claims of the plaintiff, his bill was dismissed. Both parties appeal.

We have endeavored to carefully examine the very elaborate record presented in this case. The transactions appearing therein are so numerous that we can not be expected to treat, in detail, all of them. To do so would extend this opinion to an unwarrantable length. The plaintiff's case is bottomed upon the claim that the defendant has fraudulently obtained possession of, and now holds title to, a large amount of real and personal property, which in fact belonged to her father, F. Teabout, deceased; that she paid no consideration therefor, but the same was transferred to her, by her said father, either directly or through other persons, for the purpose of defrauding his creditors; that she has received large sums as the proceeds or rental of said property; that she should be held to account to the estate for such rents; and that the title to said real estate should be decreed to be held by her in trust for said estate. The large sum involved in this litigation, variously estimated at from fifty thousand dollars to one hundred and twenty-five thousand dollars, and the many questions of law and fact, have been as fully investigated as our limited time permitted. Some branches of the plaintiff's case depended largely for support upon the testimony of the witnesses, Warren Walker, W. T. Bowen, and Eva M. Bowen, his wife. As this record shows that Walker has been impeached, we shall give weight to his testimony in so far only as it is corroborated by other facts and circumstances appearing in the case. The testimony of both Bowen and his wife must be considered in the light of the fact that they seemed to have desired, for a consideration, to have testified favorably to the defendant. The consideration not having been paid to them, they now appear as willing witnesses for the plaintiff. We do not wish to be understood as saying that they testified as they did by reason of any improper proposal or act or inducement given or held out to them by the plain-

tiff or his counsel, but the Bowen letters showed an anxiety on their part to dispose of the facts within their knowledge, to the defendant, for a large moneyed consideration, a proposition, so far as this record shows, not made in response to any suggestions emanating from the defendant or her counsel. In a general way, we may say that some of the evidence in this record is very unsatisfactory, in this, that it is general, indefinite, and often seems to be the mere opinion of the witness, resting upon facts not disclosed by him.

In 1881, Frank Teabout, who was the father of the defendant, was in partnership with one W. H. Valleau, under the firm name of Teabout & Valleau. In the spring of that year the firm failed, owing a large sum of money. Judgments were entered against them in favor of various creditors, some of whom have claims filed and proved against the estate of Frank Teabout, and to discover funds to pay which this action is prosecuted. Most of the creditors joined in bringing an action in equity in the Winneshiek circuit court to set aside and cancel certain deeds and conveyances of property which had been made by Teabout prior to the failure, and to subject the property to the payment of their claims. Most of the property in controversy in this action was involved in that case. A decree was rendered therein against the plaintiffs, which was afterwards affirmed on appeal to this court. Emily Teabout, the wife of Frank Teabout, and mother of the defendant, died in 1884. Frank Teabout died in 1888. The defendant, about 1881, had quite an amount of property, which she turned over to her father to invest and manage for her. After 1881, Teabout did no business in his own name, and, if he carried on any business with his own funds, it was done in the defendant's name. The business carried on for the defendant appears to have been prosperous. The defenses to the plaintiff's action are: *First*, a denial that she had any

property belonging to the estate of F. Teabout; *second*, prior adjudication; *third*, the statute of limitations; *fourth*, laches. We shall first consider questions arising on the special defenses pleaded, and the effect of the defendant's failure to answer the amendment to the petition, after which we shall speak of the merits of the controversy.

I.   Almost six weeks prior to the trial, the plaintiff filed an amendment to his petition. No answer was made to this amendment. It is insisted that we must therefore treat the facts stated in the amendment as admitted. The defendant claims that, as the plaintiff proceeded to trial without objection, he can not now be heard to say that the allegations of the amendment were admitted. Our statute provides that "every material allegation in a pleading, not controverted by a subsequent pleading, shall, for the purposes of the action, be deemed true." Code, section 2712. In *Clough v. Adams*, 71 Iowa, 17, after the evidence was in, the plaintiff, with leave, filed an amendment to her petition. The defendant moved to strike it from the files, which motion being overruled, he elected to stand on the ruling, and refused to answer. It was held that the allegations in the amendment must be taken as true. In *Van Aken v. Welch*, 80 Iowa, 117, the defendant was in default for want of an answer, and it was held that the averments of the petition stood confessed. In *Eslich v. Mason City & Ft. D. Railway Co.*, 75 Iowa, 443, an amendment was filed to the petition, against the defendant's objection. No answer was made to it, and the court instructed the jury that the facts therein stated were admitted, which was held proper. In the case at bar, the plaintiff proceeded to trial as if an answer had been filed. He did not seek to take the default of the defendant for want of an answer to his amendment. Both parties treated the amendment as having been denied. It does not appear

1. Practice: trial without answer: waiver.

that the fact that the amendment was not denied was ever called to the attention of the trial court. If the plaintiff intended to take advantage of the fact that his amendment had not been answered, he should have done so in the lower court, by taking default. Had he taken the proper steps there, his amendment, not being denied, would have been taken as admitted. He had the right to waive this provision of the statute, which he did by proceeding to trial, and in all respects treating the matters pleaded in the amendment as in issue. *Clay v. Alcock*, 23 Iowa, 591; *Hervey v. Savery*, 48 Iowa, 322; *Arbuckle v. Bowman*, 6 Iowa, 70.

II. The defendant has pleaded the five year statute of limitations. It is said that the plea is insufficient, in that it fails to show that more than five years have elapsed since the discovery of the fraud by the plaintiff, prior to the bringing of this action. The plea is not open to that objection. It is contended that the five year statute does not apply in this case; that this is an action "brought for the recovery of real property," wherein the action must be brought within ten years after the cause of action accrued. Code, section 2529, subdivision 5. We need not determine this question. If the ten year statute applies, then the plaintiff's action is not barred, as the property sought to be recovered was all acquired by the defendant within ten years prior to the bringing of this suit. If it comes within the fourth subdivision of the section referred to, as being an action seeking relief on the ground of fraud, then we think the action is not barred. This action was commenced in 1889. Most of the property sought to be recovered came into the defendant's possession in 1883, or after. The property in controversy, if not owned by the defendant, was held by her in trust. She was then, in law, a trustee holding property for the benefit of the real owner, Frank Teabout, and after

2. TRUSTS: action to recover property of trustee: statute of limitations.

his death she would hold it in trust for his estate. Now, the general rule is that the possession of property by the trustee, which is subject to the trust, is, in law, the possession of the *cestui que trust.*    *Wilson v. Green,* 49 Iowa, 251;    *Murphy v. Murphy,* 80 Iowa, 740; 2 Perry on Trusts, section. 863.    And in such a case the statute will not commence to run until the trustee repudiates his trust.    In *Murphy v. Murphy, supra,* it is said:    "If the property in controversy belonged to the estate of the decedent, and the defendant took possession of, and used and disposed of, it, under such circumstances as to create a trust in him, the statute of limitations would not commence to run in his favor until he had, in some unmistakable manner, given the plaintiffs notice, or sufficient reason to know, that he claimed the property adversely to them."    The evidence on the part of the defendant is that from 1881 up to the time of his death, in 1888, her father, Frank Teabout, had the control and management of all this property.    He operated a store for her, leased the lands, collected the rents, borrowed money, purchased real estate, and generally used all of the property, to all outward appearances, as if it was his own, except that he transacted the business generally in her name.    He even used the rents and profits of the business, to a certain extent.    Clearly, then, during F. Teabout's lifetime, the relation of the defendant to him and his management of the property was not such as to show that she had repudiated the trust, if one existed.    Five years had not elapsed since his death, and prior to the bringing of this action.    We conclude, then, that the plea of the statute of limitations will not avail the defendant.

III. Another defense pleaded is laches.    It is true that in many cases laches is held to be a defense, independent of the statute of limitations. 2 Pomeroy's Equity Jurisprudence, section

3. ——: ——:
laches.

965; 12 Am. and Eng. Encyclopedia of Law, p. 571; *Light v. West*, 42 Iowa, 138. Yet in such cases it must appear that the party relying upon such laches has been prejudiced by the delay in such a manner as that it would be inequitable to grant the relief sought. *Light v. West, supra.* We have held that a court of equity will not refuse to enforce a trust clearly established, on the ground that the claim is stale, when the cause of action is not barred by the statute of limitations. *Cotton v. Wood*, 25 Iowa, 44. Each case in which laches is pleaded must be determined upon its own particular facts. In view of the alleged trust character of the defendant's holding of the property, and the fact that the statute has not run against the action, we do not think that plaintiff should be held guilty of such laches as to prevent his recovery.

IV. It is insisted that the plaintiff's petition should be dismissed because he has an adequate remedy at law. This question was not raised below, and we will not consider it.

V. It is contended that the plaintiff is estopped from questioning the validity of the defendant's title to the property in controversy, because in certain actions, wherein all of the creditors who have filed their claims against the estate of F. Teabout, and had them allowed, except Jaffrey & Co., were plaintiffs, and Frank Teabout, his wife, George Valleau, husband of the defendant, Warren Walker, Milt H. Allen, and others, were defendants, the same matters were litigated as are now in controversy, as to the fraudulent disposition of his property by F. Teabout, and it was adjudged that the property belonged to the several defendants. We need not discuss the question as to whether this plea is available to the defendants, for the reason that it is undisputed that Jaffrey & Co., who are claimants against the

4. Practice in supreme court: questions considered on appeal.

5. Former adjudication: parties.

estate of F. Teabout for thirty-six thousand dollars, and whose claim is filed and allowed, and for whose benefit, in part, this suit is. prosecuted, were in no way parties to said suit, the judgment in which is pleaded as an adjudication in this action. Clearly, then, the plea was not good as a defense to plaintiff's action.

VI. The court below held that the real estate known as the "Wellington Lands" was in fact the property of Frank Teabout, and held in

6. Title to real estate: trusts: evidence. trust by the defendant for the benefit of his estate. This tract of land consisted of four hundred acres, which was sold for taxes to Warren Walker. It appears that the consideration for the land was paid by Teabout, who also paid a commission for bidding it in. The tax certificates were afterwards assigned, at Teabout's request, to William Harker. When the time came to execute the tax deeds, Teabout told Harker to take the deeds in his (Harker's) name, which was done. Harker never paid any money for or on account of these lands. In 1888 he quitclaimed them, without consideration, to the defendant. In view of all of the testimony touching this land, we think the court below properly held it to be the property of Teabout's estate. There is no claim that the defendant ever put a dollar in this land.

VII. The "Frankville farm and lots" consisted of several tracts of land, and some town lots, situated in

7. —: —; —. Winneshiek county, Iowa. February 15, 1883, Emily Teabout, the wife of Frank Teabout, and mother of defendant, held the legal title to these lots and lands. On that day she conveyed them to the defendant. This deed was not signed by Frank Teabout until after his wife's death, in 1885. When Emily Teabout died, her husband had not parted with his dower interest in said lands and lots. The conveyance made to the defendant by Frank Teabout after his wife's death was without consideration, volun-

tary, and for the purpose of defrauding his creditors. The one-third in value of this land and lots is held in trust for Frank Teabout.

VIII. The court below properly found that the defendant should account for one-third of the rents of the Frankville property, and we are satisfied with the amount of said finding.

IX. It is claimed that the Lyons note and mortgage is the property of the estate, and the court below so held. The claim rests substantially upon the evidence of Warren Walker alone. He has been impeached. The mere fact that, after the indebtedness was paid, the defendant asked Walker to satisfy the mortgage does not corroborate Walker's statement that the money for the loan was furnished by F. Teabout. We think the court erred in finding that this property belonged to the estate of Teabout.

X. Walker's testimony tends to show that in 1881 he purchased ten thousand dollars' worth of United States bonds for Frank Teabout. His evidence is corroborated, to a certain extent, as to the purchase, and as to the fact that some bonds were afterwards seen in Teabout's possession. If, however, it be conceded that the purchase of the bonds with Teabout's money is established, there is no evidence which would warrant us in saying that the defendant received the benefit of such purchase. We can not charge the defendant with this property on mere supposition.

XI. Much other property is involved in this controversy, consisting of lands, notes, mortgages, etc. It is impossible for us to consider all of these claims in detail. We have carefully examined them all, and while it must be admitted that there are facts and circumstances that tend to show that Frank Teabout had property of his own, which he may have placed in the defendant's hands, yet the showing is not such as justifies us in saying that she

received from him, or from others for him, any property belonging to him, which she should be held to account for to his estate, except as heretofore stated. To set forth our reasons for reaching this conclusion would require a lengthy review of a large volume of evidence. It is sufficient to say that the title of this property is in the defendant. Her acquisition of it may have been honest. We should not be justified in setting aside her title to this real estate unless the evidence showed, clearly and satisfactorily, that it was improperly or fraudulently obtained by her. The most that can be said is that there is evidence that might constitute a link in the chain of fraud, but the other links are missing. We need not cite authorities in support of the proposition that fraud can not be presumed, and that it will never be imputed when the facts upon which it is predicated are, or may be, consistent with honesty and purity of intention. The evidence falls short of satisfying us that the plaintiff is entitled to the relief asked, except in the particulars heretofore mentioned.

XII. Proceedings were had in the court below, after the appeal was taken, to correct the record in this case. It was claimed that in several respects the reporter's transcript, after it had been duly certified, had been altered, and certain additions made thereto, and interpolations made therein. The trial court found that such was the case, and corrected the record accordingly, It also found that such alterations, additions and interpolations were made by H. E. Long, counsel for the plaintiff herein, without authority from the court. This action and finding of the court are excepted to by the plaintiff. The plaintiff's counsel contends, in brief, that all the changes made by him in the transcript were by way of correcting errors of the reporter, and making the reporter's transcript correspond with the facts proven, as

**9. Practice: alteration of record by counsel.**

shown by the record. It matters not what counsel's motive was for thus tampering with the reporter's transcript. It is no justification for his acts to say that the record shows that such correction, changes, additions and interpolations were necessary to make the transcript conform to the facts shown by the documentary evidence introduced on the trial. We have not examined the papers introduced to ascertain if counsel's claim in that respect is well founded, for the reason that, if it be conceded, it would not warrant counsel in his action. If the reporter's transcript was not accurate, in any particular, there was a legal and proper way of correcting it, to which resort should have been had. The moment it is conceded that counsel in a case may, without authority from the court, alter, change, or add to the official transcript of the evidence, that moment such transcript becomes valueless. The only safety to litigants is in preserving inviolate the records of the court. We can not, if we would, overlook such an act of counsel. It merits the severest condemnation, and evinces a lack of proper appreciation of the duties and responsibilities devolving upon one who practices an honorable profession.

XIII. The plaintiff excepts to the action of the court in overruling the first and sixth grounds of his motion to correct the record. As we do not find in the record anything showing what said grounds were, we must presume the action of the court in that respect was proper.

The judgment of the district court, as modified with reference to the Lyons note and mortgage, is AFFIRMED.

UPON REHEARING.

FRIDAY, OCTOBER 20, 1893.

PER CURIAM.—In division I. of the opinion in this case this court said: "If plaintiff intended to take

advantage of the fact that his amendment had not been answered, he should have done so in the lower court, by taking a default." In his petition for a rehearing, the plaintiff insists that such holding contravenes the statute.

It may be admitted that the language used goes too far, and that under the statute the mere failure of the plaintiff to insist upon or take defendant's default will not constitute a waiver of his right to claim the benefit of the statutory provision. In the case at bar, the plaintiff, after the filing of the amendment, proceeded to trial, and the amendment was treated by both parties as denied. It is claimed that no evidence was taken, after the filing of the amendment, in support of the matters pleaded therein. But the evidence in fact taken, in part at least, supported the plaintiff's claim as set out in said amendment. Besides, from the record it appears that evidence was taken on the trial in support of the claim made in the amendment. Furthermore, it is clear that the claim that the amendment was not denied was first made in this court. Under such circumstances we can not consider it. *Burnett v. Loughridge*, ante, page 324. The objectionable language used in the opinion does not affect the result reached therein.

We have re-examined the other questions discussed in the petition for rehearing, and are content with the conclusion heretofore announced. The petition for a rehearing will, therefore, be OVERRULED.