## ANDERSON et al. v. SCANDIA MINING SYNDICATE et al.

Owners of mining claims formed a corporation, and agreed to convey to it their claims, in consideration of 2,500,000 shares of stock, the total amount of shares. The agreement was not carried out, and they subsequently entered into a new agreement by which they were to receive 1,000,000 shares for their claims and this agreement was carried out. Held, that the owners could rescind the original agreement and make the new agreement, and, when that was

carried out by the conveyance by them of their claims to the corporation and the issuance to them of 1,000,000 shares, the 1,500,000 shares remaining were unissued and original stock, and not treasury stock.

Where the officers of a corporation refused to sue to cancel an illegal sale of original stock at less than par, the minority stockholders could sue to set aside the sale.

Civ. Code, § 427, authorizing a corporation to purchase, hold, transfer, and convey such real and personal property as the legitimate purposes of the corporation may require, does not include unissued stock, and does not authorize a sale thereof.

Under Civ. Code, § 423, as amended by Laws 1907, c. 104, § 4, requiring corporations to issue certificates of stock when fully paid up, and authorizing corporations to provide in their by-laws for issuing certificates prior to full payment, and section 425, providing that a corporation may transfer its own stock pursuant to resolution of the stockholders or their unanimous consent, in such manner and for such price as may be by them agreed on, the directors of a corporation may not without the consent of all the stockholders dispose of the original stock of the corporation except on full payment of its par value, or under provisions for its payment in the by-laws of the corporation.

Minority stockholders discovered in September, 1908, that the officers had sold in 1904 original stock at less than par. They consulted an attorney, who advised them that the sale was illegal, and they then demanded that the officers sue to set aside the sale, but the officers refused. A few months later the minority stockholders brought suit in their own name to set aside the sale. **Held,** that the stockholders were not as a matter of law guilty of laches barring the action.

A stockholder is not chargeable with knowledge of the records of the corporation, but he may assume that the directors are acting for the interests of the corporation until the contrary appears, and he is not chargeable with laches defeating a suit by him in behalf of the corporation to compel a restitution for a loss resulting from the unlawful or negligent acts of the officers, where the action is commenced shortly after the acquisition of knowledge by him of their action.

A minority stockholder suing on behalf of the corporation to set aside an illegal sale of original stock, and for an accounting, need not expressly offer to restore to the purchaser of the stock the money advanced by him therefor, as his prayer for an accounting imports such an offer.

A stockholder suing on behalf of the corporation to set aside an illegal sale of original stock need not offer to restore to the purchaser the money advanced by him for the stock; the stockholder not being

a party to the sale, and not receiving anything directly from the purchaser.

The allowance of amendments to pleadings is largely in the discretion of the trial court, which, in the absence of abuse, will not be interfered with.

Where a demurrer to the amended complaint was sustained, the refusal to allow a second amended complaint not materially changing the allegations of the amended complaint except as to an unimportant allegation was not an abuse of the trial court's discretion.

(Opinion filed December 6, 1910.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by Henry O. Anderson and others against the Scandia Mining Syndicate and others. From a judgment of dismissal, plaintiffs appeal. Reversed.

*W. A. Lynich, A. A. Chamberlain,* and *Thurman, Stafford & Hume,* for appellants.

While the contract for the payment of stock at less than par may be binding between the corporation and the purchasing stockholder, and stockholders consenting thereto, it does not bind the dissenting stockholder, and he may compel a payment in full of the stock. A dissenting stockholder, where the stock has been issued, may maintain a suit to annul and cancel it in the hands of the original subscriber or purchaser, provided, he has not lost the right by acquiescence or laches. Cook on Corporations, 5th Ed., Vol. 1, Sec. 46: A dissenting stockholder may object to such an issue in as much as it decreases the value of his stock. He may have the transaction set aside, and the person receiving it compelled to return it. Parsons v. Joseph, 92 Ala. 403; Perry v. Tuskaloosa Cotton Seed Oil Mill Co., 93 Ala. 364; Campbell v. Morgan, 4 Ill. App. 100; Gilman, etc., R. Co. v. Kelly, 77 Ill. 426; Kimball v. New England Roller Grate Co., 69 N. H. 485, 45 Ala. 253; Fisk v. Chicago, etc., R. Co., 53 Barb. (N. Y.) 513.

*Sherman M. Booth* and *Gardner, Fairbanks & Churchill,* for respondents.

Where stock had been fully paid for and issued upon a sufficient and adequate consideration to the subscribers, such holders had the right to return the stock to the company, or to a trustee

for the benefit of the company, to be sold or donated, as might be directed by the owner of the stock, without contravening the Constitution and laws of the state. Davis v. Montgomery Fur. & Chem. Co., 8 So. 496; Kellerman v. Maier, 48 Pac. 377; Northern Trust Co. v. Columbia, 75 Fed. 936; Dickerman v. Northern Trust Co., 176 U. S. 181; Krisch v. Interstate Fish Co., 81 Pac. 855; Glover v. Manilla Gold Min. & Mill. Co., 19 S. D. 559; Mosher et al. v. Sinnott, 79 Pac. 742; Thompson on Corporations, 2d Ed. par. 3436; Wood on Modern Business Corporations, par. 199; Spear v. Bordeleau, 79 Pac. 322; Mackey v. Burns et al., 64 Pac. 485; Cook on Corporations, 6th Ed. 313. The sale of stock to Bolander was valid, even though original stock, and plaintiffs are estopped by having received benefits from said sale, and by their laches, from now questioning its validity. Stein v. Howard, 4 Pac. 662; in re So. Mountain Con. Min. Co., 5 Fed. 403; in re So. Mit. Con. Min. Co., 14 Fed. 347; Chambers v. Mittnacht, 122 N. W. 434; Civil Code, section 1285; Smith v. Detroit, 17 S. D. 413; Calavada Co. v. Hayes, 119 Fed. 202; Curtis v. Larkin, 94 Fed. 251; Taylor v. So. R. Co., 13 Fed. 152; Steinbeck v. Bon Homme Min. Co., 152 Fed. 333; Barcus v. Gates, 89 Fed. 783; Dedrick v. Ormsby, 12 S. D. 59; Hunt v. N. W. Mortgage Co., 92 N. W. 23; Tourtelot v. Whithed (N. D.), 84 N. W. 8; Kimball v. Chi., etc., Brick Co., 119 Fed. 102; Hardt v. Heidweyer, 152 U. S. 547; Foster v. Mansfield, 146 U. S. 88; Lady Wash. Con. Co. v. Wood, 45 Pac. 809; Farr v. Semmler, 24 S. D. 290, 123 N. W. 835.

CORSON, J. This is an appeal by the plaintiffs from a judgment entered in favor of the defendants dismissing the complaint. The action was instituted by the plaintiffs to cancel 1,250,001 shares of the capital stock issued by the defendant corporation standing in the name of Ida C. Bolander, and to amend the records of said company to show said cancellation; that the defendants Ida C. Bolander and H. M. H. Bolander account to said company for all dividends collected by them upon said stock, and that the said Ida C. Bolander and H. M. H. Bolander and all

others claiming under them shall be restrained and prevented from in any way voting or acting as stockholders in said company in so far as the holding of said issue of stock to the amount of 1,250,001 shares is concerned; and that the said defendant corporation be enjoined and restrained from holding any stockholders' meeting until the rights of all the parties shall be fully determined. A demurrer was interposed to the original complaint and sustained, and thereafter the plaintiffs filed the present amended complaint, which was also demurred to, and the demurrer sustained, and the judgment entered upon the demurrer to the amended complaint is before us for review on this appeal. The complaint is very lengthy, covering upwards of 20 pages of the printed abstract, and we shall only attempt in this opinion to give a brief synopsis of the material parts of the same.

It is alleged in the said complaint that the defendant corporation was organized under the laws of South Dakota, having its principal place of business at Huron, in the county of Beadle, in this state; that plaintiffs at the time of the transaction hereinafter complained of were stockholders in said corporation, and have ever since been, and are now, stockholders in the same; that the said R. Tennerstedt, Lester G. Childs, George W. Childs, John P. Ahrens, H. M. H. Bolander, F. W. Lambden, George K. Rix, Walter B. Rix, and S. H. Brand are directors of said corporation; that the said Tennerstedt is president, said Childs treasurer, said Rix secretary, and R. A. Childs is attorney of said corporation; that the said defendant Ida C. Bolander pretends and claims to be the holder and owner of 1,250,001 shares of the capital stock of said company; that the amount of the capital stock of said corporation is in right and in fact $1,000,000, divided into 1,000,000 shares of the par value of $1 each; that the alleged original issue of said stock was as follows: A. J. Spute 625,000 shares, G. T. Johnson 625,000 shares, Ole Brown 1,250,000 shares; that the original plan for organization of said company and issue of said capital stock entered into by the organizers and promoters and parties otherwise interested in said company intended and provided for the payment of the capital stock of 2,500,000 shares, and

its issue as fully paid and nonassessable stock by an arrangement with the said Spute, Johnson, and Brown, whereby the said Spute, Johnson, and Brown were to sell and convey to the said company certain mining properties thereinafter mentioned in full payment of the entire capital stock of 2,500,000 shares; that the said arrangement provided that, upon the issue to said Spute, Johnson, and Brown of the said entire capitalization, the said Spute, Johnson, and Brown were to reassign and deliver back to the company 1,500,000 shares of the said stock thus purported to be fully paid, to be held, sold, or otherwise used for the benefit and advancement of said company; that said Spute, Johnson, and Brown were thereby to receive and keep as their own personal and separate property 1,000,000 shares of the said capital stock of said company, which was the actual, real purchase price agreed upon to be paid by said company for the said mining properties; that the arrangement whereby the whole capital stock of 2,500,000 shares was to be delivered to said Spute, Johnson, and Brown, instead of the 1,000,000 shares, the actual purchase price agreed upon in payment of the properties, was intended and provided for by and between all of the parties as a means of enabling the said company to offer the said 1,500,000 shares of said stock which were to be returned to it to be sold for its benefit and advancement, as fully paid and nonassessable stock to prospective purchasers; that in furtherance of this project and plan thus to have the entire capital stock of 2,500,000 shares appear as fully paid and nonassessable, among other things, a stockholders' meeting was held on the 2d day of April, A. D. 1902, at the city of Chicago, state of Illinois; that the proceedings of this the first stockholders' meeting providing for the said issue of stock and payment therefor is shown by the minutes of said meeting to be as follows:

"We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names, to the capital stock of Scandia Mining Syndicate and we severally agree to pay the said corporation, for each share, the sum of one dollar. Dated at Chicago, county of Cook, State of Illinois, 1902. Name and P. O. address, No. of shares. A. J. Spute, Denver, Colo., 625,000;

G. J. Johnson, Denver, Colo., 625,000; Ole Brown, Minneapolis, Minn., 1,250,000.

"And the said directors did then and there demand payment in full for said subscriptions.

"Then came the said subscribers and tendered payment in the following manner, to-wit:

"A. J. Spute for payment of the several shares of stock by him subscribed as above, conveys to the Scandia Mining Syndicate the several mining properties, claims, tracts and parcels of land mentioned and described in the seven (7) mining deeds executed by said A. J. Spute, April 3, 1902, to said Syndicate in full for said stock by him subscribed. G. T. Johnson for payment of the several shares of stock by him subscribed as above, conveys to the said Scandia Mining Syndicate all the several mining properties, claims, tracts and parcels of land mentioned and described in the several four (4) mining deeds executed by said A. J. Spute April 3, 1902, to said Syndicate in full for said stock by him subscribed.

"Ole Brown for payment of the several shares of stock by him subscribed as above, conveys to the said Scandia Mining Syndicate all the several mining properties, claims, tracts and parcels of land mentioned and described in the four (4) mining deeds executed by him, Ole Brown, to said Syndicate. Also conveys as attorney in fact for Louis Gunderson, S. I. Brown and Edward O. Brown, all the several mining properties, claims, tracts and parcels of land mentioned and described in the several mining deeds executed by him as such attorney in fact for said Louis Gunderson, S. I. Brown, and Edward O. Brown, dated April 3, 1902, in full for said stock by him subscribed.

"Which payments are duly accepted in full payment for said stock and the same is ordered to be issued accordingly upon the written order of said subscribers, and the secretary is instructed to begin the issue of said stock with No. 101.

"The resignation of Philip Lawrence in writing was handed in and on motion the same was duly accepted.

"The duties and obligations of the said temporary directors being then and there ended according to law, the meeting ad-

journed and this record signed in evidence thereof.  A. J. Spute.
G. T. Johnson.  Ole Brown.  Herman Carlson.

"And now at the office, No. 1237, Stock Exchange Building,
Chicago, Illinois, at 12 o'clock m. on the 2nd day of April, 1902,
came the following subscribers, to-wit: A. J. Spute, Ole Brown,
G. T. Johnson, and waiving notice and publication of notice did
hold a stockholders' meeting, and pass and vote resolutions, by-
laws, rules and regulations hereafter recorded.  G. T. Johnson, Ole
Brown, by E. O. Brown, Atty. in Fact."

·It is further alleged that said Spute, Johnson, Brown and
Carlson, and other parties present at said stockholders' meeting,
and interested therein as promoters, organizers, and holders of the
proposed capital stock, and directors and officers of said corpora-
tion, arranged and agreed with each other and on behalf of said
company that all the parties interested were to arrange to issue
said stock and make transfer of said mining properties on the day
following, to-wit, the 3d day of April, 1902, so that written instru-
ments evidencing said conveyances might be delivered to said
company at the time the certificates would be, as aforesaid, ready
for delivery; that after said stockholders' meeting adjourned and
the said parties interested and present at said meeting as aforesaid
commenced to arrange for the issue of said certificates of capital
stock for said 2,500,000 shares, the entire amount of capital stock
of the said company, the said Spute, Johnson, and Brown and the
officers and other parties interested and representing said corpora-
tion were advised, informed, and believed that under the revenue
law of the United States then in force it was necessary for the
said Spute, Johnson, and Brown and other parties interested in the
said transaction in connection with the proposed issue of the
2,500,000 shares of the capital stock of said company to pay to the
United States $60,000, and that thereupon the said Spute, John-
son, and Brown refused to pay or in any way make themselves
liable for the payment of said $60,000, and insisted that, in lieu
of the intended and original proposed plan, a new arrangement
and understanding for the purchase of their mining properties by
the said company and issue of capital stock therefor be entered

into, by the terms and conditions of which new arrangement the said Spute, Johnson, and Brown would receive from said company only the 1,000,000 shares of the capital stock of the same, and that they were to receive that amount of the paid-up and non-assessable stock of the said company in payment for the said mining properties. That thereupon, and in order to accomplish this change, a meeting of the board of directors of said company was held the same day, and at the said meeting of the board of directors the following transactions were had, as appears from the minutes of said meeting: "Record of First Meeting of Board of Directors, Continued. On motion of Mr. Johnson, seconded by Mr. Brown, it is ordered that none of the treasury stock shall participate in the earnings of the syndicate or be entitled to any dividends thereof while remaining or being in the treasury of the syndicate and unsold. Whereas A. J. Spute, G. T. Johnson and Ole Brown who subscribed to the whole of the capital stock of the Scandia Mining Syndicate have this day surrendered said stock to the treasury of said syndicate for the consideration of certain shares of said stock owned by them respectively upon their written orders: Resolved, that the president and secretary of said syndicate be and they are hereby authorized and instructed to issue stock fully paid and nonassessable to the said A. J. Spute, G. T. Johnson and Ole Brown, * * * as follows: A. J. Spute 250,000 shares, G. T. Johnson 250,000 shares, Ole Brown 500,000 shares. The meeting then adjourned." It is further alleged that there remained in the treasury of said corporation 1,500,000 shares of the capital stock of said corporation; that said corporation has since its organization been continuously engaged in operating and leasing mines and other business in connection therewith; "that at a special meeting of the directors of said company held on the 19th day of March, 1904, the following resolution was passed: 'Resolved: That the president and secretary of this company, as such officers of this company, be authorized and directed to duly issue to Mr. H. M. H. Bolander, 1,250,001 shares of the capital stock of this company upon the payment to the treasurer of the sum of $30,000.'" It is further alleged that thereafter said presi-

dent and secretary of said company, pretending to act under the authorization thus given by said resolution, issued and delivered to said H. M. H. Bolander the said 1,250,001 shares of the said capital stock, and received from said Bolander the sum of $30,000 in payment thereof; that the said Bolander has never paid to the said corporation nor to its treasury any other consideration for said stock than the said sum of $30,000 as hereinabove set forth; that the certificate for said stock so issued to said Bolander was made out in the name of said Bolander and to him delivered; that thereafter said Bolander caused said original certificate thus issued to him to be canceled, and a new certificate to be issued to said defendant Ida C. Bolander, who is the wife of H. M. H. Bolander.

It is further alleged that the said company did not by resolution of its stockholders, nor by their consent in writing, authorize the transfer or issuance to said Bolander of said 1,250,001 shares of stock; that the existence of said stock is prejudicial to the interests of said company and to the plaintiffs herein; that the action of the directors in attempting to authorize said sale was in violation of the authority vested in said board of directors and contrary to the laws of the state of South Dakota; that at the time the said board of directors thus unlawfully and illegally contracted to sell the 1,250,001 shares of the capital stock of the company to said Bolander the company was actively engaged in conducting and operating said property as provided and intended by its charter; that as an active, going concern, it had at that time more than $3,000 to its credit in bank; that, other than its capital stock, the amount of its outstanding debts and liabilities did not exceed $1,000; that the said company was with the funds it then had able to continue its operations, and conduct its business without the sale of any part of its stock illegally sold to said Bolander, or otherwise held in the treasury of said company; that shortly prior to the time of the illegal and unlawful sale of said stock to said Bolander, and from six to eight weeks immediately preceding the time when the said board of directors so attempted to sell the said stock to said Bolander, sales had been made of the capital stock of said company ranging in price from 15 to 30 cents a share,

which facts and sales were known to the said directors and to said Bolander; that the price paid by said Bolander was less than 2½ cents per share; that until within six months last past plaintiffs were not in any way apprised of the issuance of said stock for less than par, nor have they in any way ratified said sale of stock to said Bolander for said sum of $30,000 nor consented thereto; that plaintiffs for the first time became apprised and informed of the facts connected with the alleged issuance of said stock to said Bolander in connection with an attempt of said Ida C. Bolander to call a stockholders' meeting, which was in the month of September, A. D. 1908; that the plaintiffs thereupon counseled with their attorneys, who, after an examination of the records of said company, informed plaintiffs of the manner and method in which said stock was alleged to have been issued to said Bolander and the violation of plaintiffs' rights in the premises; that thereupon plaintiffs demanded of the officers and directors of said corporation that they institute proceedings to set aside, cancel, and annul said alleged sale of stock to said Bolander, but that the officers and directors refused to institute such proceedings, and informed the plaintiffs that, if they desired any relief in the premises, they must themselves proceed to institute the proceedings; that said Ida C. Bolander, the present holder of said stock, and said H. M. H. Bolander, original holder of said stock, all and each of them knew and were advised of the fact that said sum of $30,000 was the only consideration ever given for said stock; that said Bolander and Ida C. Bolander have conspired together and attempted to defraud all of the other stockholders of said company of all right and interest in and to the assets of said company, and, in furtherance of said conspiracy and attempt, said Bolander has repeatedly stated that he would not permit any dividend to be paid to any other stockholders in said company; that said Bolander went in June, 1908, to Nome, Alaska, and while there, by the connivance of one Brand, the then and there representative of said company, obtained possession of certain sums of money then on deposit to the credit of said company in bank, and books and papers and other property of said company, and fraudulently and willfully

and deliberately concealed and withheld said money and other property from the possession of said company, and still conceals and withholds same; "that said Ida C. Bolander and H. M. H. Bolander, pretending to own the controlling interest in the capital stock of said company, attempted to call, and did cause to be called, a meeting of the stockholders of said company for the purpose of ousting the present directors in order that they might elect a new board; that the direct object and purpose of the calling of said meeting of stockholders, as plaintiffs believe, was to prevent and forestall the present board of directors in their efforts to compel said Henry M. H. Bolander to turn over and deliver to said corporation its money and property so wrongfully taken and withheld by said Bolander; that said 1,250,001 shares, if legally issued and held by said Ida C. Bolander, would constitute a majority of the capital stock of said Scandia Mining Syndicate, and voted at an annual stockholders' meeting would elect as directors such persons as might be selected by said Bolanders, and that said Bolanders have recently stated that it was their intention at the next meeting of stockholders of said syndicate to use said stock for the purpose of electing as a new board of directors persons who would be selected and named by them; that the election of such persons would enable the said defendants Bolander to carry out their nefarious schemes of plundering said defendant corporation of its assets, and deprive your plaintiffs of any rights and benefits as stockholders in said defendant syndicate;" that said alleged stock held by said Ida C. Bolander should be canceled as illegal and void; that said Bolanders have collected upon said fraudulent issue of stock dividends, which were illegal and unlawful, and should be returned and paid to said company, and which dividends much exceed the money so paid by said Bolander; wherefore, plaintiffs pray that said stock so issued to said Bolander be canceled and annulled, that said Ida C. Bolander be enjoined and restrained from holding any stockholders' meeting until her rights shall be fully determined, and plaintiffs pray for other and general relief, to which complaint the defendant demurred on the ground, among others, that said complaint does not state facts sufficient to constitute a cause of action.

As before stated, the demurrer was sustained. Subsequently to the sustaining of the demurrer to the amended complaint, and before judgment was entered, the plaintiffs moved the court for leave to file a second amended complaint, which motion was by the court denied, and the ruling of the court in denying the same is assigned as error, and thereupon the court entered judgment dismissing the complaint. The proposed amendment to the complaint did not have the effect to materially change the allegations of the complaint, and the only material allegation contained in the proposed amended complaint is "that said plaintiffs are willing, and hereby tender and offer, to pay to said Bolanders the said sum of $30,000, or such part thereof as upon an accounting may be found to be due to said Bolanders, together with whatever further sum by way of interest or other charges may be found upon proper accounting and decree to be equitable and just and proper."

It is contended by counsel for the defendants, in support of the ruling of the court in sustaining the demurrer, that "the stock sold to Bolander was treasury stock, and as such subject to sale by the directors as any other property"; that the sale of stock to Bolander was valid, even though original stock, and plaintiffs are estopped by having received benefits of said sale, and by their laches, from now questioning its validity; and that the plaintiffs have not offered to do equity, and that the proposed amendments to the amended complaint did not effect any material change in the first amended complaint, and the court was therefore justified in denying the plaintiffs' motion for leave to amend the same.

It is contended by the appellants that the sale of the stock to Bolander was illegal for the reason (1) that the allegations of the complaint show that the stock was original stock, and that its sale as original stock at less than par value was illegal; (2) that, if the stock was treasury stock, its sale was illegal because it was made by the directors and not by resolution of the stockholders or with their unanimous consent in writing; and (3) that if the stock was treasury stock, although it did not have to be disposed of at par, its sale was at such a figure below its real value and under such conditions, as rendered such sale fraudulent. It will be ob-

served that by the allegations of the complaint Spute, Johnson, and Brown were the owners of a number of mining claims; that they organized a corporation and agreed to convey thereto their several mining claims in consideration of 2,500,000 shares of the capital stock of the corporation, being the total number of shares of the corporation; and that Spute was to receive 625,000, Johnson 625,000, and Brown 1,250,000 shares. It will be further observed that this arrangement was made on the 2d day of April, 1902, and was not to be completed until the following day, the 3d of April, and that neither the transfer of the properties was made nor the stock issued on that day, but were to be made the following day, and that on the 2d day of April, Spute, Johnson, and Brown having been advised of the large sum necessary to be paid to the government in order to complete the transaction as then agreed upon, the original agreement was in effect canceled and rescinded and a new agreement entered into, by which the owners of the property were to receive 1,000,000 shares, nonassessable, of the capital stock, and that thereupon, upon the following day, the later agreement was carried into effect by the transfer of the mining properties to the company and the receipt by Spute, Johnson, and Brown of 1,000,000 shares of the nonassessable capital stock. It will thus be seen that the original agreement was never carried into effect, but that the new agreement by which Spute, Johnson, and Brown were to receive 1,000,000 shares was completed and the 1,000,000 shares of the stock issued to them under the new agreement, and that this necessarily left 1,500,000 shares of the capital stock of said company unissued and remaining in the company. The 1,500,000 shares of the capital stock, not having been issued and still remaining in the company, was original stock, and not treasury stock, in the ordinary sense in which the term "treasury stock" is used. This stock, therefore, could not, under the provisions of the laws of this state, be sold at less than its par value.

It is contended by respondents that the transfer, in effect, was a conveyance of all the mining properties to the corporation for the 2,500,000 shares of the same, and that in legal effect the

1,500,000 shares were issued to Spute, Johnson, and Brown and donated by them to the company as treasury stock, but we are unable to agree with counsel in this contention. It clearly appears by the allegations of the complaint that the transaction as first agreed to on the 2d of April was never completed, and that, before its completion, a new arrangement was entered into by which Spute, Johnson, and Brown were to receive 1,000,000 shares non-assessable stock in lieu of the 2,500,000 shares, and that they did so receive the said 1,000,000 shares, and, the original contract having been rescinded and canceled before the completion of the contract originally entered into, the 1,500,000 shares was not issued to them, and consequently they could not, and did not in fact or effect, donate to the company the 1,500,000 shares. The stock, therefore, never became treasury stock, and was not subject to transfer by the directors of the company at less than its par value.

It was clearly competent for Spute, Johnson, and Brown, before the final execution of the original agreement, to cancel and rescind the same, and make the new agreement which was subsequently carried into effect. The minority stockholders, therefore, as the officers and directors of the corporation had refused to institute proceedings to cancel said sale, clearly had the right to insist upon the illegality of the attempted sale by the directors to Bolander of this unissued stock for a less sum than its par value, and to insist that the said sale was illegal and void.

Section 423, Civ. Code, as amended by section 4, ch. 104, Sess. Laws 1907, reads as follows: "All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary, and may provide in their by-laws for issuing certificates prior to full payment, under such restrictions and for such purposes as their by-laws may provide. * * *" The part of the section above quoted makes no change in section 423 as it originally appears in the Civil Code of 1903. Changes are made in other parts of the section, but they do not affect the provisions above quoted. Section 425 provides: "A corporation may out of its surplus funds, by resolution of its stockholders or by their

unanimous consent in writing, purchase, hold and transfer shares of its own stock in such manner and for such price as may be by them agreed upon." It will be noticed there are two important qualifications in this section. One is that it may purchase stock out of its surplus funds, and the other is that the directors may transfer such stock by resolution of its stockholders, or their unanimous consent in writing. Section 427 provides: "Every corporation, as such, has power: * * * (4) To purchase, hold, transfer and convey such real and personal property as the legitimate purposes of the corporation may require, not exceeding, in any case, an amount limited by law." This section does not include unissued stock. The provisions quoted, it will be noticed, do not confer upon the board of directors any power to dispose of the original stock of the corporation except upon full payment of its par value, or under provisions made for its payment in the by-laws of the company. Assuming, therefore, that the allegations of the complaint are true, the purported sale of the 1,500,000 shares to Bolander for a less sum than its par value by the board of directors was clearly unauthorized and null and void.

The contention of the respondents that the plaintiffs are estopped by their laches and by the fact that the consideration paid by Bolander of $30,000 was received by the company is not in our opinion tenable. It is alleged in the complaint, as will be noticed, that the "plaintiffs for the first time became apprised and informed of the facts and circumstances connected with the alleged issuance of said stock to said Bolander in connection with the attempt of the said Ida C. Bolander to call a stockholders' meeting; * * * that at the time said meeting of stockholders was called plaintiffs learned thereof, which was in the month of September, A. D. 1908;" that the plaintiffs consulted with their attorneys in regard to the said sale, and were then apprised and informed of the manner and method by which said stock was alleged to have been issued to said Bolander in violation of plaintiffs' rights; that demand was made upon the officers and directors of said defendant syndicate that proceedings should be brought by said defendant corporation to set aside and cancel the alleged sale, but that said

officers and directors declined so to do, and informed the plaintiffs that they were the proper parties to bring the action, and, if they desired relief in the premises, they must proceed to bring such action in their own name. Clearly, under these allegations, no laches could as matter of law be imputed to the plaintiffs, as this action was commenced within a few months thereafter. Whitney v. Hazzard, 18 S. D. 490, 101 N. W. 346; McDermont v. Anaheim Union Water Co., 124 Cal. 112, 56 Pac. 779; Long v. Valleau, 87 Iowa, 675, 55 N. W. 31, 56 N. W. 748; Stiger v. Bent, 111 Ill. 328; Verdugo Canon Water Co. et al. v. Theodoro Verdugo et al., 152 Cal. 655, 93 Pac. 1021; Citizens' Nat. Bank of Attica v. Judy et al., 146 Ind. 322, 43 N. E. 259; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383.

It is contended, however, by the respondents that, while it is true the delay is to be imputed to the party only from the time he is informed of the facts, yet a stockholder of a corporation is chargeable with knowledge of its records. This contention is clearly untenable. Cook on Private Corporations (6th Ed.) § 731, says: "It is not incumbent on the stockholder to keep himself informed as to the various acts of the corporation. He is not chargeable with knowledge merely because he might have ascertained the facts by an examination of the corporate books." To the same effect is Brinkerhoff v. Roosevelt, 143 Fed. 478, 74 C. C. A. 498, and Joy v. Ft. Worth Express Co., 24 Tex. Civ. App. 94, 58 S. W. 173. In Brinkerhoff v. Roosevelt, supra, the United States Circuit Court of Appeals for the Second Circuit of New York held, as appears by the second headnote, that "directors of a corporation are assumed to act for its interests, and a stockholder is justified in relying on such assumption until the contrary appears, and is not chargeable with laches which will defeat a suit brought by him in behalf of the corporation to compel restitution for a loss resulting from. the unlawful or negligent acts of the trustees, where such action was commenced shortly after he acquired knowledge of their action."

The contention of the respondents that it does not affirmatively appear from the complaint that the plaintiffs offered to do

equity by restoring to the Bolanders the money advanced by them for the stock is not tenable, for the reason that the plaintiffs in this action ask for an accounting, and in such an action the plaintiff does not have to offer to pay what may be due from him, for his prayer for an accounting imports such an offer. Nelson v. Dunn, 15 Ala. 501; Wells v. Strange, 5 Ga. 22; Goldthwait v. Day, 149 Mass. 185, 21 N. E. 359; Craig v. Chandler, 6 Colo. 543. It also seems to be the rule in an action to set aside an illegal sale of stock an offer to return the consideration is unnecessary. McDermont v. Anaheim Union Water Co., supra; Stebbins v. Perry County, 167 Ill. 567, 47 N. E. 1048. In the former case the Supreme Court of California says: "An offer to restore or a tender of money back is only necessary where it is sought to rescind or annul something. Here the plaintiffs ask to have that declared void which has on their statement been void from the beginning and not merely voidable. The plaintiffs, so far as appears from the complaint, have received nothing on account of the sale of the stock, and therefore could not in any event be called on to restore anything." In the case of Stebbins v. Perry County, supra, the Supreme Court of Illinois held, as appears by the sixth headnote: "A stockholder seeking in equity to cancel capital stock which has been paid for by an issue of bonds need not, as a condition precedent to his right to sue, offer to return such bonds, where he was not a party to their procurement, has no control over them, and is prejudiced by their existence." The contention of respondents is further untenable for the reason that the plaintiffs, having received nothing directly from the defendants Bolander, were not required to make any offer to restore to them the money which they had paid, and for the further reason that it is alleged in the complaint that the Bolanders have received in dividends an amount in excess of the money so paid by them.

The contention of the appellants that the court erred in denying the plaintiffs leave to file a second amended complaint is not in our opinion subject to review on this appeal. The question of allowing amendments of pleadings is largely in the discretion of the trial court, and, in the absence of a showing of abuse of such

discretion, the ruling of the trial court will not be reversed. In our opinion there was no abuse of discretion on the part of the trial court in denying the appellants' motion, and this ruling therefore will not be disturbed. The conclusions arrived at by the court necessitate a reversal of the judgment of the circuit court dismissing the action and the order sustaining the demurrer to the complaint.

The judgment of the trial court and order sustaining the demurrer are therefore reversed.